OWEN SARGENT, Plaintiff-Appellant, *v.* ILLINOIS INSTITUTE OF TECHNOLOGY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 79-7

Opinion filed October 19, 1979.

Steven M. Levin, of Chicago, for appellant.

Mary Anne Smith, of Chicago, for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff appeals from the dismissal with prejudice of his complaint for back pay, injunctive and other equitable relief for his alleged wrongful discharge from his employment as a campus police officer at the Illinois Institute of Technology (IIT). On appeal, he contends that (1) IIT breached the employment contract between itself and plaintiff, the terms of which were set forth in a personnel manual adopted by defendant; (2) IIT's discharge of plaintiff frustrated plaintiff's legal rights and the public policy of Illinois; and (3) IIT's action constitutes State action and violated plaintiff's due-process rights under the Illinois and United States constitutions. We affirm. The pertinent facts follow.

In a three-count complaint, plaintiff alleged that he began his employment with IIT as a campus policeman on October 1, 1975, and so continued until he was discharged on April 18, 1978. He stated that as part of his regular equipment he was issued a personnel manual containing the rules and regulations of the campus police force, attached to his complaint as Exhibit A. He alleged that as part of the employment contract between himself and IIT, he agreed to follow these rules and regulations and that IIT agreed to evaluate his conduct and seek disciplinary sanctions, when necessary, according to the procedures prescribed in the rules and regulations. He specifically alleged that IIT was subject to the following express conditions contained in the manual:

"(1) Every member of the Illinois Institute of Technology Campus Police shall be subject to reprimand suspension, reduction in rank, deduction of pay or dismissal from the Campus Police Department and from the service of the college according to the nature of the offense for any of the following causes or for any violation of any of the other Rules, Regulations or orders of this department now in force or that may hereafter be issued.

(2) After having been given an opportunity to be heard in his own defense * * *."

Plaintiff alleged that as a further part of the employment agreement he agreed that his actions would be governed by a Chicago ordinance relating to "Special Policemen" (Municipal Code of Chicago, ch. 173) which he also attached to the complaint. In reliance on this agreement and pursuant to the statute, he underwent a character investigation, had his fingerprints lodged with the Bureau of Identification and met certain residency requirements which resulted in his commission as a special policeman. As such he must be licensed annually and pay a $10 license fee, which he paid in reliance on his contract with IIT. He also alleged that any other rules, regulations, or orders issued by IIT were incorporated by reference to the employment agreement.

The complaint stated that IIT's policy required that any disciplinary action be commenced by a notice specifying the name and position of the accused, the nature of the violation, any remarks, and the action taken, and that the policy was "to provide means for the prompt, confidential, and impartial resolution of staff-employees, job related problems."

The complaint recounted the events which plaintiff claims led to his discharge. Pursuant to an IIT grievance procedure which prohibited "intimidation, harassment, coercion or reprisal in any form against an employee presenting a grievance," plaintiff had filed a complaint against his superior, Henry Wurst, the superintendent of buildings and grounds. The grievance alleged that Wurst had used an IIT vehicle and gasoline for his personal transportation between September 1977 and March 1978 and charged him with "theft of services." After he filed the grievance, he spoke with Wurst's superior, Melvin Tracht, and expressed his fear that Wurst would seek his discharge "for any excuse that defendant Wurst could concoct" in retaliation for the grievance. Later, on April 7, 1978, plaintiff, in the performance of his police duties and in compliance with IIT's rules, detained a student to prevent him from violating IIT's rules and regulations. As a result of this incident, he was summarily suspended from the campus police force without any opportunity to be heard. On April 14, 1978, he received a "hearing subject to administrative review," to determine whether his appointment could be terminated "for cause." Wurst presided at the hearing which defendants Lyons, Clark, Vice

and Dixon also attended. Plaintiff alleged that all of these defendants were aware of the grievance against Wurst. On April 20, 1978, plaintiff received a letter from Wurst stating that "based on the facts presented at the hearing and the written statements of those involved in the April 7, 1978 incident it has been decided that your employment should be terminated." In a subsequent letter defendant Martin, the president of IIT, informed plaintiff that "Based on this review, I do not believe the action taken to terminate your employment was in any way a result of the report made by you concerning Mr. Wurst's use of an Institute vehicle" and affirmed his termination.

Plaintiff alleged that defendants breached the employment contract in that they, *inter alia*: (1) did not evaluate his conduct according to the employment agreement or inform him that his conduct was in violation of Exhibit A, contrary to such rules and regulations; (2) provided no written notice of disciplinary action to be taken; (3) conducted an unfair hearing where Wurst, the subject of plaintiff's grievance, presided; (4) violated the agreement to prohibit reprisal by allowing retaliation by Wurst; (5) violated his right to be heard in his own defense by (a) not providing him with written charges, (b) not allowing him to present witnesses or to seek counsel, (c) not allowing him to confront witnesses, and (d) not having the proceedings transcribed and recorded; and (6) as a result of their actions left plaintiff without an adequate legal remedy for the "harm" to his personal and property rights and in his future career as a police officer.

The three counts sought relief on the following theories, respectively: (1) express contract; (2) implied-in-law contract; and (3) IIT's actions constituted State action and violated plaintiff's due-process rights. Plaintiff sought an injunction to prevent his discharge, or at least pending a disciplinary hearing, his reinstatement with full back pay, and other equitable relief.

Defendants filed a motion to dismiss plaintiff's complaint with prejudice for failure to state a cause of action. (Ill. Rev. Stat. 1977, ch. 110, par. 45.) Following plaintiff's answer to the motion and argument, the trial court allowed defendants' motion and this appeal followed.

OPINION

■■ Defendants' motion to dismiss admits as true all well-pleaded facts in the complaint (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187, 380 N.E.2d 790) but not conclusions of law or fact unsupported by allegations of specific facts upon which the conclusions are based. (*Wilson v. LaSalle Manufacturing & Machine Co.* (1978), 58 Ill. App. 3d 219, 225, 374 N.E.2d 30; *Roemer v. Zurich Insurance Co.* (1975), 25 Ill. App. 3d 606, 610, 323 N.E.2d 582.) Unless it clearly appears that no set of

facts can be proved under the pleadings which would entitle plaintiff to recover, the complaint should not be dismissed. (*Fitzgerald v. Chicago Title & Trust Co.; Fechtner v. Lake County Savings & Loan Association* (1977), 66 Ill. 2d 128, 133, 361 N.E.2d 575.) With these principles in mind, we review the propriety of the trial court's order of dismissal.

Plaintiff first contends that the terms of the personnel manual adopted and issued by IIT to its employees became an employment contract binding both parties to its terms. He alleges that IIT discharged him without providing written allegations of any offense or an opportunity to be heard in his own defense in clear violation of the employment agreement.

■ Generally, an employment relationship which has no specific duration is an at-will relationship and may be terminated by either employer or employee, for or without cause. (*Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 667, 384 N.E.2d 91; *Long v. Arthur Rubloff & Co.* (1975), 27 Ill. App. 3d 1013, 1023, 327 N.E.2d 346.) The right to terminate the relationship is subject only to any applicable contractual or statutory provisions. (*Criscione; Pleasure Driveway & Park District v. Jones* (1977), 51 Ill. App. 3d 182, 190, 367 N.E.2d 111.) Plaintiff does not state any specific duration for his employment with IIT and it would appear that it was an employment at will. He has cited no applicable statutory provisions which would restrict IIT's right to terminate the employment nor has research revealed any. Any restriction upon IIT's right to summarily discharge plaintiff must therefore be based upon an employment contract.

Plaintiff contends that the terms of the personnel manual adopted and issued by IIT to its employees became an employment contract binding the parties to its terms. He relies on *Carter v. Kaskaskia Community Action Agency* (1974), 24 Ill. App. 3d 1056, 322 N.E.2d 574, which he concedes is the only case he could find to support his position. There the court held that a "Personnel Policy Manual" adopted by the employers and employees became part of the employment contract. *Carter* is distinguishable from the instant case in several respects. There the manual was adopted subsequent to plaintiff's employment and was considered a modification of the original employment contract. The employer had compiled the manual and reviewed it with the employees who accepted it. The court found that mutuality of obligation existed for the contract and that by continuing to work under the manual, the employees had furnished consideration. The board of directors had approved the manual and testimony of a former director of the corporation clearly showed that the manual was part of the contract.

■ Unlike *Carter*, the campus police guidelines set forth in the personnel manual were not bargained for and the manual was given to plaintiff

when he began his employment. Viewed as a whole, the manual defines the duties and responsibilities of a campus policeman and serves as a code for his conduct. By agreeing to be bound by the guidelines, he has merely agreed to properly perform his required duties and nothing more. Plaintiff provided no additional consideration to support the predischarge hearing requirement and it did not become an enforceable contract. (*Zagar v. Field Enterprises Educational Corp.* (1978), 58 Ill. App. 3d 750, 752-53, 374 N.E.2d 897.) Since the personnel manual was not an enforceable contract, count I of his complaint was properly dismissed.

Plaintiff's second contention is that the trial court erred in dismissing his complaint where he alleged that his retaliatory discharge frustrated his legal rights and violated Illinois public policy. In his brief on appeal, he "asks this court to recognize his cause of action for retaliatory or abusive discharge," citing *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, and *Leach v. Lauhoff Grain Co.* (1977), 51 Ill. App. 3d 1022, 366 N.E.2d 1145. Plaintiff's second count of the complaint was based on an "implied-in-law obligation on defendant IIT to re-dress [*sic*] the wrong done to plaintiff in this matter" and not to violate any of the "matters" alleged in count I which was based on an express contract. It appears that count II of the complaint is based on an implied contract theory. This cause of action for retaliatory discharge which plaintiff seeks to have this court recognize is premised on a separate and independent tort. (*Kelsay v. Motorola, Inc.*; *Leach v. Lauhoff Grain Co.*) Although count I of the complaint mentioned "retaliation," it is clear that plaintiff had reference to IIT's policy of nonretaliation for filing of grievances and that his basis for recovery was an express contract. We therefore find that plaintiff failed to allege a cause of action in tort for retaliatory discharge in his complaint. The theory upon which a case is tried in the lower court cannot be changed on review, and an issue not presented to or considered by the trial court cannot be raised for the first time on review. (*Kravis v. Smith Marine Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417; *Benson v. Isaacs* (1961), 22 Ill. 2d 606, 610, 177 N.E.2d 209.) Since plaintiff failed to plead a tort action for retaliatory discharge in the trial court, he may not now raise the issue on appeal. Therefore, we will not address the merits of this contention.

Plaintiff's final contention is that IIT's action constituted State action for purposes of the due-process clauses of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §2) and that he properly alleged a cause of action for the violation of those rights. Although the Illinois due-process clause is not expressly limited to actions by the State as is that of the United States, the supreme court has so

interpreted it. (*USA I Lehndorff Vermoegensverwaltung GmbH & Cie v. Cousins Club, Inc.* (1976), 64 Ill. 2d 11, 20-21, 348 N.E.2d 831.) Unless IIT's actions constituted State action, plaintiff has not stated a claim for violation of his constitutional due-process rights.

Plaintiff alleged that the following establish the existence of State action:

(1) IIT's name was deliberately chosen to imply that it is formally a part of the university system of Illinois and under State control.

(2) IIT is organized under the laws of Illinois, which include, among others, the provisions of chapter 144 (Ill. Rev. Stat. 1977, ch. 144) concerning universities and colleges. Various sections of chapter 144: (a) give the Superintendent of Public Instruction the right to approve various university actions; (b) give the Superintendent of Public Instruction authority to revoke the certificate of approval, thus permitting IIT the right to exist; and (c) regulate the award of degrees, funding, financial assistance and aid. Plaintiff alleged that these provisions create "a pervasive and systematic regulatory scheme" which taken together must be viewed as State action.

(3) IIT employed plaintiff pursuant to the municipal ordinance concerning special police officers and that IIT invoked the aid of the State in having plaintiff so licensed.

■ The United States Court of Appeals for the Seventh Circuit considered whether State action was present because of the first two incidents and found that it was not. (*Cohen v. I.I.T.* (7th Cir. 1975), 524 F.2d 818, *cert. denied* (1976), 425 U.S. 943.) Regarding the use of "Illinois" in IIT's title, the court found:

> "The facts that I.I.T. was chartered by the State and includes the word 'Illinois' in its title do not lend any support to the claim that I.I.T. acts under color of state law. Every private corporation, whether profitable or charitable, is chartered by the States; unless the charter contains a special authorization or directive to engage in the challenged conduct, the fact that it is granted by the State is of no significance. The use of the State's name gives rise to an appearance of State involvement in I.I.T.'s activities, but, again, unless the appearance of state support either facilitates the activity in question or provides evidence that the institution is, in fact, a State instrumentality, it is of no relevance. Plaintiff has not alleged that either the charter or the name of I.I.T. has any connection with the school's personnel policies." 524 F.2d 818, 824-25.

Likewise, in the instant case, there is no allegation that the name of the school had anything to do with the employment contract or plaintiff's discharge.

Concerning the regulations of the institution by the State and with reference to provisions found in chapter 144 (Ill. Rev. Stat. 1977, ch. 144), the court found:

> "The same analysis is applicable to the allegations describing the State's comprehensive regulation of the Institute. The regulation encompasses a wide variety of matters, from physical plant to course content and faculty qualifications. It is settled, however, that the mere existence of detailed regulation of a private entity does not make every act, or even every regulated act, of the private firm, the action of the State. Unless it is alleged that the regulatory agency has encouraged the practice in question, or at least given its affirmative approval to the practice, the fact that a business or an institution is subject to regulation is not of decisive importance." 524 F.2d 818, 826.

■■ Again, plaintiff has not shown how the State by its regulation has encouraged or approved of IIT's alleged wrongful practice. We find the reasoning of the court in *Cohen* persuasive and that no State action is involved in the first two instances cited by plaintiff.

■■ Plaintiff attempts to distinguish this case from *Cohen* by arguing that IIT enlisted the aid of the State in licensing the campus police as special policemen pursuant to the Chicago ordinance, and that Illinois' agreement in this matter made IIT's actions attributable to the State. It is clear that licensing and regulation of an activity by the State does not make all incidents of the activity attributable to the State. (*Moose Lodge No. 107 v. Irvis* (1972), 407 U.S. 163, 32 L. Ed. 2d 627, 92 S. Ct. 1965; *Jackson v. Metropolitan Edison Co.* (1974), 419 U.S. 345, 42 L. Ed. 2d 477, 95 S. Ct. 449.) A sufficiently close nexus between State and the challenged action of the regulated entity must be shown so that the action of the entity may be fairly treated as that of the State. (*Jackson v. Metropolitan Edison Co.*) We find that no such nexus exists in this case.

■■ The plaintiff was required to be licensed as a special policeman so that he could carry weapons. The State would naturally have an interest in regulating this activity. The only activity on the part of the State was to commission plaintiff. It was in no way involved in plaintiff's discharge and did not encourage or approve of the action. Therefore, IIT's decision to discharge plaintiff without a hearing cannot be considered an act of the State. To do so would make the discharge of any "special policeman" by a private employer State action and require that due-process safeguards precede his termination. We therefore find that plaintiff has failed to connect the State to IIT's action and that he has failed to adequately allege a cause of action for violation of his constitutional rights to due process.

For the foregoing reasons, we conclude that plaintiff's complaint was properly dismissed. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.