NELDA PIPER, Plaintiff-Appellant, *v.* BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 514, Defendant-Appellee.

Third District    No. 80-551

Opinion filed August 25, 1981.—Rehearing denied September 29, 1981.

Bradley W. Swearingen, of Moehle, Reardon, Smith & Day, of Peoria, for appellant.

Daniel M. Harrod, of Harrod Law Firm, P. C., of Eureka, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal presents a question of pleading only. Plaintiff filed a complaint and two amended complaints in the circuit court of Tazewell County. Each of them alleged in substance that she had been wrongfully discharged by the defendant and sought damages for breach of contract.

Each of the complaints was dismissed on motion of the defendant under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45) for failure to state a cause of action. Our task therefore is to determine whether the second amended complaint sets forth all the essential elements of a cause of action. *Williams v. RCA Corp.* (1978), 59 Ill. App. 3d 229, 376 N.E.2d 37; Ill. Rev. Stat. 1979, ch. 110, par. 42(2).

■■ It is elementary that a motion to dismiss under section 45 admits all facts well-pleaded in the complaint. We note at the outset that each of defendant's three motions to dismiss were grounded on form, not on substance. The motions addressed to the original complaint and to the amended complaint were based on sections 43(1) and 33 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, pars. 43(1) and 33). These sections concern themselves with the method of stating separate claims. The motion to dismiss the second amended complaint reiterates these sections and adds sections 45(3) and 45(4) (Ill. Rev. Stat. 1979, ch. 110, pars. 45(3) and 45(4)) and Supreme Court Rule 133(a) (73 Ill. 2d R. 133(a)). These latter sections and rule likewise are concerned with form. We are therefore led to the ineluctable conclusion that all the well-pleaded facts in the second amended complaint are uncontroverted.

Plaintiff's second amended complaint was in four counts. Summarizing count I, we find that plaintiff was employed by defendant originally on October 20, 1969, and at the time of the events complained of July 1979, she was manager of defendant's word processing center. Attached to the original complaint and referred to in the subsequent amended complaints were four exhibits which go to the heart of plaintiff's case. Exhibit "A" is entitled "Administrative and Non-Teaching Professional Personnel Manual" (the Manual) and purports to set forth "a definite statement of the College's personnel and employment regulations and procedures as they apply to the administrative and non-teaching professional staff of Illinois Central College."

Exhibit "B" is entitled "Employee Performance Appraisal" and purports to be her superior's appraisal of plaintiff's performance for the year 1978. The overall evaluation was "average."

Exhibit "C" is a notification of employment from the president of Illinois Central College to plaintiff dated April 17, 1979.

Exhibit "D" is plaintiff's handwritten resignation dated July 18, 1979.

Further allegations from the second amended complaint are that in each of the 10 preceding consecutive years plaintiff had received a similar notification of employment. The notification as set forth in Exhibit "C" is in words and figures in pertinent part as follows:

"April 17, 1979
Date

ILLINOIS CENTRAL COLLEGE
NOTIFICATION OF EMPLOYMENT

*  *  *

GRADE LEVEL: 7

*  *  *

EFFECTIVE DATE: July 1, 1979

It is understood that this appointment is subject to the provisions of the Illinois Public Community College Act, to such sections of the School Code of Illinois (as amended) as may apply, and to the bylaws, policies, rules and regulations of the Board of Trustees of Community College District No. 514, the legal governing Board of Illinois Central College, as may from time to time be adopted.

The appointee shall earn vacation at the rate of 15 working days per year.

This agreement is void if not returned to the Personnel Office within ten (10) calendar days from the above date. The copy is for the appointee's file.

> ILLINOIS CENTRAL COLLEGE
> [Signature]
> Leon H. Perley
> President

I accept this appointment to the staff of Illinois Central College.

April 24, 1979     [Signature]
Date                 Signature of Appointee."

Additional allegations stated that on July 18, 1979, plaintiff was called to the officer of her supervisor and was told that unless she submitted her resignation, a letter of immediate dismissal would be forthcoming from the president of the college; that she suffered emotional strain and confusion because of such demand and submitted the resignation under duress; that she was never told any reason for such demand; that it was in violation of the provisions of the Manual; that her resignation was accepted effective October 15, 1979; that prior thereto on two occasions she requested reinstatement and a written notice of the cause for her dismissal; and that both requests were denied. Count I concludes by alleging damages for breach of an express contract.

Count II realleges the factual matters of count I and alleges breach of an implied contract of employment until plaintiff's retirement.

Count III realleges the factual matters of count I and alleges a deprivation of procedural due process under the fourteenth amendment to the Constitution of the United States and the Illinois Constitution of 1970.

■■ Count IV realleges the factual matters of count I and alleges deprivation of substantive due process. This proposition is not argued in plaintiff's brief and hence is deemed waived under Supreme Court Rule 341(e)(7) (73 Ill. 2d R. 341(e)(7)).

Our consideration of this case is somewhat hampered by the lack of specificity in defendant's pleadings. As noted above, the bulk of its motion to dismiss was concerned with mechanics, although there was a very general allegation of failure to state a cause of action. The trial court's order is likewise imprecise, holding only that there was a "failure to state a claim upon which relief may be granted." An examination of defendant's brief leads us to the conclusion that it is urging three principal points: (1) That the allegations of the existence of a contract are conclusory and that no contract in fact existed; (2) that even if a contract did exist, it was terminated by plaintiff's resignation; and (3) that the second amended complaint did not specifically incorporate any statutory or regulatory duties as part of the contract. We disagree on all points.

As to the first point, the second amended complaint incorporated by reference all of the exhibits attached to the original complaint as authorized by Supreme Court Rule 134 (73 Ill. 2d R. 134). Exhibit "C" set forth above contains the express contract which is the subject of count I. We fail to understand how the complaint could be more specific in this regard. The rule was announced long ago in *North v. Kizer* (1874), 72 Ill. 172, 175:

"There are two well recognized modes of declaring upon a written contract: either by setting it out *in haec verba*, or according to its legal effect. When the former mode is adopted, as in this case, the court will construe the contract for the pleader, and recognize what is its legal effect."

■■■ A further examination of the pleadings is convincing that the contract was for a term of one year. Plaintiff has alleged that a similar notice had been received for each of the ten preceding years. Furthermore, paragraph "O" of the Employment Regulations and Procedures of the Manual is entitled "Employment of Less than 12 months" refers to a period of employment for "less than the normal 12-month period." It also states that vacation days will be earned on a per-month basis, 1.25 days per month for Ranges 6-7, computed on an annual basis in the same manner as salaries. Exhibit "C" shows on its face that plaintiff was entitled to 15 days' vacation. Simple arithmetic demonstrates, then, that Exhibit "C" must have been for a period of 12 months.

"Count I sufficiently pleads an express contract of employment for one year from July 1, 1979. We cannot say, however, that count II is also sufficient. As explained above, count II simply reiterated all of count I and then alleged an implied contract until retirement. No additional facts were pleaded and count II does not purport to be an alternative to count I, but is based solely on the instrument supporting count I. An express contract and an implied contract based on the same instrument are in logic and common sense mutually exclusive. The trial court was correct in dismissing count II."

We turn next to the question of plaintiff's resignation. One is reminded of the famous couplet from Samuel Butler's *Hudibras*:

"He that complies against his will
Is of his own opinion still."

This thought was echoed by Justice Traynor speaking for the California Supreme Court in *Moreno v. Cairns* (1942), 20 Cal. 2d 531, 534-35, 127 P.2d 914, 916:

"Whenever a person is severed from his employment by coercion the severance is effected not by his own will but by the will of a superior. A person who is forced to resign is thus in the position of one who is discharged, not of one who exercises his own will to surrender his employment voluntarily."

Another California case bears remarkable procedural similarities to the instant one. (*Odorizzi v. Bloomfield School District* (1966), 246 Cal. App. 2d 123, 54 Cal. Rptr. 533.) In that case a school teacher had been arrested on certain criminal charges on June 10, 1964. On June 11, 1964, he delivered his resignation to his superiors, and it was accepted by the defendant on June 13. During the month of July following the criminal charges were dismissed. The teacher sued for reinstatement, alleging that his resignation was invalid because obtained through duress, fraud, mistake, and undue influence and given at a time when he lacked capacity to make a valid contract. He further alleged specifically that the resignation was obtained when he was under severe emotional strain, having just completed the process of arrest, questioning by the police, booking, and release on bail, and having gone 40 hours without sleep. At this time the superintendent and his principal came to his apartment and said that they had his best interests at heart, that he should take their advice and resign immediately, and that there was no time to consult with an attorney. They further stated that if he did not resign immediately, the District would suspend and dismiss him and publicize the proceedings; but that if he did resign immediately, there would be no publicity and it would make it easier for him to obtain employment as a teacher elsewhere.

The trial court dismissed the complaint without leave to amend, and

the District Court of Appeal reversed, holding that while duress had not been adequately pleaded, both subjective and objective elements entering into undue influence had been, and remanded the case for trial. The California court said:

> "It was sufficient to pose '* * * the ultimate question * * * whether a free and competent judgment was merely influenced, or whether a mind was so dominated as to prevent the exercise of an independent judgment.' (Williston on Contracts, §1625, (rev. Ed.); Restatement, Contracts, §497, comment c.) The question cannot be resolved by an analysis of pleading but requires a finding of fact." 246 Cal. App. 2d 123, 135, 54 Cal. Rptr. 533, 543.

Two Illinois cases deal with the same subject, although not as directly as the California authorities. In *People ex rel. Marcoline v. Ragen* (1971), 132 Ill. App. 2d 523, 270 N.E.2d 643, the plaintiff had been a State policeman and after questioning him about gifts and gratuities, his superiors suspended him. Later a complaint was filed with the Police Merit Board and a little more than a month later plaintiff resigned. He then sued in *mandamus* for reinstatement. The appellate court, while indicating that a resignation procured by fraud or duress was suspect, held that plaintiff's complaint was insufficient to raise those questions. In *Whitaker v. Pierce* (1976), 44 Ill. App. 3d 148, 358 N.E.2d 61, a choirmaster's resignation was demanded because he had joined another church. He sought a temporary injunction to prevent the church from terminating his employment. The appellate court held that there was no basis for the writ, but said, citing *Moreno*:

> "It is conceivable that one could present sufficient facts to indicate that a resignation was involuntarily coerced and thus was legally equivalent to a discharge." 44 Ill. App. 3d 148, 151, 358 N.E.2d 61, 64.

Neither *Ragen* nor *Whitaker* can be considered direct authority for the solution of the instant case. The gist of *Ragen* is that any duress, whether properly pleaded or otherwise, was shown not to have been perpetrated by the defendants or their agents. Therefore, plaintiff lacked an essential element of his case, *i.e.*, that the duress be directly attributable to the defendant. In *Whitaker* the court held only that the allegations were insufficient to sustain the issuance of a temporary injunction, not that they were insufficient to go to trial.

In the instant case the plaintiff has alleged that she was a long-time employee, had received in April an evaluation of "average," had received an employment contract for one year in April effective in July, and without prior warning was forced to resign. Unlike *Ragen*, the action was taken in direct contravention of the dismissal procedures set forth below. Plaintiff alleged that there was no basis for the institution of dismissal proceedings, as there was in *Ragen*. Implicit in the holding in *Ragen* is an

indication that a resignation obtained in order to avoid dismissal proceedings which have at least a disputed basis in fact will not be considered as being under duress, even though the employee has become nervous and fearful. Contrariwise, when there is no *prima facie* factual basis for invoking dismissal procedure and this is combined with severe emotional strain and confusion, a factual question is raised as to the existence of duress or undue influence, and the trial court was in error in holding as a matter law that they were absent. *Odorizzi.*

If sufficient evidence can be presented at trial to invalidate the resignation (a proposition on which we offer no opinion), it then follows that the discharge of plaintiff was a breach of the contract. As set forth above, the contract is subject to the rules and regulations of the defendant. The Manual contains elaborate provisions for dismissal. Paragraph "H" of Employment Regulations and Procedures of the Manual states in part:

"H. *DISMISSAL*

1. Definition

Dismissal is termination of service at a specified date or, under extreme circumstances, an immediate termination of service.

2. Statement of Policy

a. Cause for Dismissal

Any individual may be removed from College employment when there is good and sufficient cause, as defined in the Bylaws and Policies of the Board of Trustees of Illinois Central College. Good and sufficient cause includes but is not limited to:

(1) moral turpitude;

(2) unprofessional conduct, including willful neglect of duty, insubordination, conduct detrimental to the College and actions contravening the stated philosophy and goals of the institution;

(3) incompetence.

(4) incapacity, whether mental or physical;

(5) violation of Board policies and regulations or the law pertaining to community colleges;

(6) curtailment of program.

b. Dismissal Procedure

(1) Recommendation for Dismissal

Normally the recommendation for dismissal of an employee will come from his immediate supervisor, who, when he feels there is good and sufficient cause, and when dismissal is considered to be in the best interest of the College, may make such recommendation to the appropriate senior administrator, who

may then recommend to the President that the professional employee in question be dismissed. In all cases except those considered detrimental to the general welfare of the College, recommendations for dismissal will be made only after the problems have been thoroughly discussed with the employee and after every effort has been made to resolve the problem.

(2) Notification of Dismissal

If the president of the College concurs with the advice of the appropriate senior administrative officer, the President shall given written notice to the employee in question that the employee's service with the College will be terminated on a specified date, normally at the time of the expiration of the employee's current contract period. Such notification shall set forth the reason(s) for discharge. Under special circumstances, when he deems it necessary, the President may remove a professional employee from the College by immediate dismissal."

■■ It is quite apparent that no effort of any kind was made to comply with the provisions for dismissal, and plaintiff alleges that she was never reinstated nor given any explanation of her dismissal. It therefore follows that either the threat to dismiss or the fact that she was never reinstated on her demand constituted a breach of the contract.

■■ Defendant's third contention, that the Manual was not incorporated into plaintiff's contract, may be briefly disposed of. Defendant relies on *Sargent v. Illinois Institute of Technology* (1979), 78 Ill. App. 3d 117, 397 N.E.2d 443, but it is readily distinguishable. There, the plaintiff did not allege a written contract, so it would be impossible to incorporate by reference a personnel manual. Here, Exhibit "C" set forth above states that it is subject to "[t]he bylaws, policies, rules and regulations of the Board of Trustees." We have already indicated what the Manual purports to set forth. Defendant's contention is without merit.

We hold that the trial court was in error in dismissing count I with prejudice.

■■ Turning now to count III of the second amended complaint, we find allegations that plaintiff was denied her rights of due process under the fourteenth amendment to the Constitution of the United States and the Illinois Constitution of 1970. Defendant maintains that there is no State action, citing *Sargent*. Again, *Sargent* is inapposite. There the defendant was a private school; here it is apparent that the defendant is a State school. There is State action.

The question then becomes whether the plaintiff had a "property

interest" in her employment.. If she did, she could not be denied her property without due process of law. In *Powell v. Jones* (1973), 56 Ill. 2d 70, 77-78, 305 N.E.2d 166, 170, the supreme court held "that one certified as a State employee pursuant to the Personnel Code, the Personnel Department Rules and the Civil Service Commission Rules of the State of Illinois * * * does have a 'legitimate claim of entitlement to continued employment' [citation] safeguarded by due process guarantees." The court in *Powell* stated:

"[I]t is apparent that while every public employee does not have a right to continued employment, a public employee can have such a right dependent upon the surrounding circumstances including existing rules and understandings. Like the teacher in *Sindermann*, a public employee may be able to show, from surrounding circumstances, that he has a legitimate claim to continued employment, and it is clear that such claim, whether characterized as 'property' or otherwise, has now been held to be entitled to due process protection." 56 Ill. 2d 70, 77, 305 N.E.2d 166, 169-70.

Without deciding anything on the merits, we believe that plaintiff has made sufficient allegations to raise a due process question. Essentially, she has said that she was a public employee with a legitimate expectation of continued employment; that this was cut off by a demand to resign under duress without any hearing or notice.

■■ The trial court erred in dismissing count III with prejudice.

Therefore, we affirm for the reasons given above the dismissal of counts II and IV of the second amended complaint; we reverse the dismissal of counts I and III; and we remand the cause for further proceedings in accordance with the views expressed herein.

Affirmed in part, reversed in part, and remanded.

GREEN, J., concurs.


Mr. PRESIDING JUSTICE TRAPP, dissenting:

I would affirm the order of the trial court for the reason that the amended complaint alleged only conclusions of the pleader upon the issue of duress in procuring the resignation of the plaintiff. The allegations here pleaded are no more allegations of fact than those found in *People ex rel. Marcoline v. Ragen* (1971), 132 Ill. App. 2d 523, 270 N.E.2d 643, or *Whitaker v. Pierce* (1976), 44 Ill. App. 3d 148, 358 N.E.2d 61. In the latter case the court stated:

"When one voluntarily submits a resignation, he thereby divests himself of any legal interest in his former employment. (*Cf. Bauer.*) It is conceivable that one could present sufficient facts to

762

indicate that a resignation was involuntarily coerced and thus was legally equivalent to a discharge. (See, *e.g., Moreno ·v. Cairns* (1942), 20 Cal. 2d 531, 127 P.2d 914.) However, plaintiff does not do so here. He merely alleges that his resignation was demanded by Hillborn and that he was 'acting under the coercion and wrongful influence' of Hillborn when he submitted it. In the light of the indicated voluntariness of his letter of resignation[2] which was before the trial court, and because the aforesaid allegations are conclusory, we think that a showing of ultimate probable success was not made." 44 Ill. App. 3d 148, 151, 358 N.E.2d 61, 64.

The opinion in *Ragen* discloses allegations of fact substantially more specific than those pleaded here. The opinion states, nevertheless:

"The trial court dismissed plaintiff's amended complaint, on the ground that the allegations of duress and coercion were conclusions only, and that the complaint was insufficient since it did not allege facts from which it would have been inferred that the resignation was the product of duress perpetrated by defendants. * * * We agree that the allegations of duress in plaintiff's amended complaint are mere conclusions and do not disclose facts to support a finding that his resignation was the product of duress and coercion." 132 Ill. App. 2d 523, 525, 270 N.E.2d 643, 644.