**Jennifer A. JONES, Plaintiff,**

**v.**

**BRITT AIRWAYS, INC., Defendant.**

**No. 83C4619.**

United States District Court,
N.D. Illinois.

July 24, 1985.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Plaintiff Jennifer Jones ("Jones") filed a complaint against defendant Britt Airways, Inc. ("Britt"), her former employer, for libel and slander as a result of certain statements that were made concerning her dismissal. Jones asserts that several Britt employees made defamatory statements accusing her of embezzling company funds. Jones alleges that, as a direct and proximate result of the defamatory statements made by Britt employees, she has suffered humiliation and embarrassment and has been unable to secure further employment. She seeks special damages for lost wages and an impaired credit rating, as well as general damages for humiliation suffered.

Britt has moved for summary judgment on three grounds. First, it contends that no defamatory statements were published, asserting that a communication by one corporate agent to another does not constitute publication, and any defamatory remarks were made only amongst Britt employees. Second, even if publication occurred, Britt argues that any remarks made were subject to a qualified privilege which can be overcome only by a showing of actual malice. Finally, Britt contends that the remarks allegedly made can be innocently construed and are not actionable.

Jones has also moved for leave to file a first amended complaint which would add a count of negligence against Britt for failure to investigate thoroughly the reasons for her dismissal. Jones contends that Britt assumed a duty to investigate when, in the course of a meeting with Jones concerning the voided ticket that was the subject of her dismissal, Britt employees told her that such an investigation would be undertaken. As a result of its failure to complete the promised investigation, Jones asserts that Britt is liable to her in negligence.

For the reasons stated below, both Britt's motion for summary judgment and Jones' motion for leave to amend her complaint are denied.

*Facts*

When considering a motion for summary judgment, this Court must construe the pleadings, depositions and affidavits most strictly against the moving party and most liberally in favor of the opponent. *Trulson v. Trane Co.*, 738 F.2d 770 (7th Cir.1984). The facts are therefore stated in a light most favorable to the plaintiff.

Pursuant to a routine audit, Robert Murrell ("Murrell"), Comptroller for Britt, initiated an investigation of several suspect tickets issued on March 13, 1983 at the Britt station at O'Hare Airport. The tickets had been marked "void," indicating that they had not been used and that no money had been received. Other information revealed that the tickets had been issued and actually used by passengers. The investigation began on March 22, 1983, and was conducted by Murrell, by the Director of Stations, Robert Pfrommer ("Pfrommer"), by the Station Director, James Arble ("Arble"), and by the Assistant Station Director, Brian Leahy ("Leahy"). Several Britt employees were questioned concerning the tickets.

On March 24, 1983, Murrell, Pfrommer, Arble, and Leahy met with Jones and questioned her about three tickets issued that morning, all of which were subsequently determined to have been properly voided. During that meeting, Jones initially acknowledged that she might have written the word "void" on another suspect ticket issued on March 13, but later denied the writing. Murrell then placed Jones on suspension pending an investigation, which he allegedly claimed might include polygraph examinations and handwriting analysis. Jones told Murrell she was willing to submit to a polygraph test and expressed her wish to assist Britt in the investigation.

Jones contends that no such investigation was ever conducted and she was never given a polygraph examination. The extent of Britt's investigation consisted of a phone call made to Sherry Confere, the passenger to whom the March 13 ticket had been issued. Ms. Confere verified that she had used the ticket on March 13, and she executed a statement to Britt to that effect. On April 13, 1983, Arble sent Jones a letter stating that she was terminated because the "discrepancies" that had been brought to her attention had been "confirmed." Arble sent copies of the letter to Murrell and Pfrommer.

Before and after she was terminated, Jones' attorney requested information concerning both the investigation and Jones' ultimate termination. He also reasserted Jones' willingness to assist in the investigation. He received a letter from Marilyn Britt, Assistant to the President, confirming the reasons for Jones' suspension and termination. The letter stated that her dismissal was based on her conduct at the March 24 meeting, specifically her denial that she had voided the suspect ticket, and on Britt's determination that the ticket had actually been used by a Britt passenger.

The circumstances surrounding Jones' suspension and subsequent dismissal were discussed with several low-level Britt employees, including a ticket agent, Denise Farace, and a counter agent, Donna Witten, both of whom were outside the scope of the investigation.

*Discussion*

█ Publication is an essential element of a cause of action for libel or slander. The only requirement for publication is that the defamatory statements be communicated to a third person. "There may be publication to any third person. It may be made to ... the defendant's own agent, employee or officer, even when the defendant is a corporation." W. Prosser & W. Keeton, *Torts* § 113 at 798 (5th ed. 1984). Some courts have found no publication to have occurred when a defamatory statement is communicated only within the corporation, *see e.g., Prins v. Holland North*

*American Mortgage Co.,* 107 Wash. 206, 181 P.2d 680 (1919), but these courts apparently confused the issues of publication and privilege. Prosser, *id.* at 799.

Illinois slander and libel cases rarely concern the issue of publication because communication to any third party satisfies the Illinois publication requirement. Only a qualified privilege can render such statements protected. For example, in *Kamberos v. Schuster,* 132 Ill.App.2d 392, 270 N.E.2d 182 (1st Dist.1971), an attorney sued her supervisors for defamatory statements made in memoranda and job evaluation reports concerning her conduct on the job. The court found the statements were published but protected by a qualified privilege.

Britt cites only one Illinois case to support its theory that communication between members of a corporation does not constitute publication for the purposes of libel. Britt contends that the court in *Welch v. Chicago Tribune Co.,* 34 Ill.App.3d 1046, 340 N.E.2d 539 (1st Dist.1975), implicitly recognized this theory. In *Welch,* a memorandum containing defamatory statements about an employee was placed on a bulletin board in a newsroom. The court stated that publication occurred when the bulletin was read by an individual who may or may not have been an employee. "Publication to third persons having no interest in the reasons for which plaintiff was terminated was actionable...." *Id.* at 1052–53, 340 N.E.2d 539. The court reversed the granting of summary judgment to the defendant, however, because the defendants had not established their qualified privilege defense as a matter of law. Thus, *Welch* does not support Britt's argument.

█ Britt also contends that no publication can occur between agents of the parties to the action. Therefore, when Arble's secretary transcribed Jones' termination letter, and when Jones' attorney received Marilyn Britt's letter, they were acting as agents to the parties involved and publication could not have taken place. Although publication of Arble's letter may not have occurred upon dictation to his secretary,

*Mims v. Metropolitan Life Insurance Co.*, 200 F.2d 800 (5th Cir.1952), *cert. denied*, 345 U.S. 940, 73 S.Ct. 831, 97 L.Ed.2d 1366 (1953), it did occur when copies of it were directed to Arble and Pfrommer. When a letter is written in response to an attorney's inquiry, however, "that letter is the equivalent to a publication to plaintiff himself, and therefore is privileged and is not actionable." *Millsaps v. Bankers Life Co.*, 35 Ill.App.3d 735, 742, 342 N.E.2d 329 (2nd Dist.1976).

This Court holds that, with the exception of Marilyn Britt's letter to Jones' attorney, all of the statements in this case were published for the purposes of establishing that element of libel and slander.

*Qualified Privilege*

■ Defendant contends that even if the alleged statements were published, they were protected by a qualified privilege. A party seeking to assert a qualified privilege must satisfy five elements:

1) good faith by the writer, 2) an interest or duty to uphold, 3) a statement limited in scope to that purpose, 4) a proper occasion, and 5) publication in a proper manner and to proper parties only.

*Bond v. Pecaut*, 561 F.Supp. 1037, 1039 (N.D.Ill.1983). Whether the qualified privilege is established is an issue of fact. *Welch v. Chicago Tribune Co.*, 34 Ill. App.3d 1046, 1051, 340 N.E.2d 539 (1st Dist.1975).

An employer unquestionably has an interest in investigating suspicious conduct by employees within his company. In *Fascian v. Bratz*, 96 Ill.App.3d 367, 51 Ill.Dec. 901, 421 N.E.2d 409 (3rd Dist.1981), management personnel of a Kroger grocery store investigated the disappearance of money order funds. They suspected the involvement of the defendant. Even though a full police investigation later cleared the employee, the court upheld the employer's actions. "Kroger had an undeniable interest in determining the source of the theft and who did it." *Id.* at 369, 51

Ill.Dec. 901, 421 N.E.2d 409. Under similar circumstances here, Britt clearly had an interest in determining the circumstances surrounding the improper issuance of tickets and appropriation of company funds, and the March 24 meeting was a "proper occasion" to determine the facts.[1]

An issue of fact regarding the qualified privilege is raised, however, concerning the scope of the Britt investigation. Jones contends that extensive publication of the defamatory statement occurred among several levels of Britt employees, ranging from the assistant to the President to a ticket agent. She claims that such publication is not made in an "appropriate manner and to the appropriate parties." In *Fascian v. Bratz, supra*, the court upheld the theft investigation because "all inquiries with respect thereto were conducted by Kroger's management employees behind closed doors." By confining the scope of the investigation, the qualified privilege was protected. Similarly, in *Ashe v. Hatfield*, 13 Ill.App.3d 214, 300 N.E.2d 545, (1st Dist. 1973), a derogatory memorandum about the plaintiff's job performance was conditionally privileged because publication was limited to other management personnel. Because the depositions submitted by both parties in this case are in conflict as to who discussed Jones' dismissal and termination, a material issue of fact exists which precludes summary judgment. When construed in a light most favorable to Jones, it appears that defamatory statements were not confined solely to discussion among management personnel.

Even if Britt can establish her entitlement to a qualified privilege, the privilege may be overcome by a showing of actual malice on the part of the defendant. *Colson v. Stieg*, 89 Ill.2d 205, 60 Ill.Dec. 449, 433 N.Ed.2d 246 (1982). Actual malice is defined as publication of a defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Fopay v. Noveroske*,

---

1. In *Fascian*, the court upheld the privilege even though the Kroger investigation persisted for two months.

31 Ill.App.3d 182, 189, 334 N.E.2d 79 (5th Dist.1975). The plaintiff must prove the issue of malice by "clear and convincing evidence." *Id.* at 190, 334 N.E.2d 79.

Jones asserts that Britt's bad faith, or its reckless disregard for the truth, is demonstrated by Murrell's failure to investigate the incident. Murrell's alleged investigation was to include a polygraph test and a handwriting analysis, neither took place. A failure to investigate is not in itself evidence of bad faith. *Troman v. Wood*, 62 Ill.2d 184, 340 N.E.2d 292 (1975). Nonetheless, there must be some justification for the failure to investigate. *Fopay v. Noveroske*, 31 Ill.App.3d 182, 334 N.E.2d 79 (5th Dist.1975). To prove malice based on reckless disregard for the truth, there must be "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, at 731, 88 S.Ct. 1323, at 1325, 20 L.Ed.2d 262 (1968).

There is sufficient evidence in the record to indicate that Britt personnel may have entertained doubts about Jones' guilt. Murrell himself admitted that he had doubts as to who had written the "void" on the ticket at issue and admitted that his only basis for accusing the plaintiff of having done so was the purported similarity in writing. He conceded, however, that the writing was also similar to that of another suspected employee and conceded that he was no handwriting expert. He did nothing to determine who in fact was guilty, despite his promises to the contrary, and accused the plaintiff despite the fact that another supervisor admitted to having improperly voided six tickets and keeping the cash just one hour before the plaintiff was questioned. Finally, according to plaintiff, the defamatory accusations against her were repeated and disseminated extensively amongst various Britt employees, afterwards further evidencing Britt's bad faith or reckless disregard of the truth. Because these circumstances indicate that there is a factual issue as to the existence of malice, Britt's motion for summary judgment cannot be granted. *Welch v. Chicago Tribune Co.*, 34 Ill.App.3d 1046, 1052, 340 N.E.2d 539 (1st Dist.1975).

### Innocent Construction

█ Britt also contends that any libelous or slanderous statements made are not actionable because they are subject to the Illinois innocent construction rule. The innocent construction rule, as applied in *Chapski v. Copley Press*, 92 Ill.2d 344, 65 Ill.Dec. 884, 442 N.E.2d 195 (1982), is defined as follows:

> ... a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may ... reasonably be interpreted as refering to someone other than the plaintiff, it cannot be actionable *per se*. This preliminary determination is properly a question of law to be resolved ... in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff.

*Chapski v. Copley Press*, 92 Ill.2d at 352, 65 Ill.Dec. 884, 442 N.E.2d 195.

Illinois courts have been liberal in applying the innocent construction rule. The writings or statements must be read as a whole and given their obvious meaning. In *Ashe v. Hatfield*, 13 Ill.App.3d 214, 300 N.E.2d 545 (1st Dist.1973), a memorandum which bore on the plaintiff's capacity to do his job was construed innocently. The language used by Arble in his April 13 letter to Jones informing her of her dismissal is similar in many respects and may therefore be subject to innocent construction. Murrell, however, testified that he interpreted the "discrepancies" that Arble claimed were "confirmed" to mean that Jones had improperly voided the March 13 ticket and had taken the cash. Such a construction by a key member of Britt's staff makes innocent construction of Britt's letter impossible. As the letter can not be interpreted to refer to anyone other than Jones,

the *Chapski* guidelines make this an issue of fact to be determined by a jury.

When reviewing the occasions in which Britt employees discussed the alleged improper voiding of tickets and Jones' involvement, there are several instances where innocent construction is not possible. For instance, Jones claims that Murrell stated to several other members of Britt management that she "stole money" from the cash drawer and that a fellow ticket agent heard that she had been discharged for stealing money. These statements infer criminal activity by Jones and can not be construed to infer that she was merely drawing her salary in advance, as Britt suggests by citing *Conrad v. Logan*, 4 Ill.App.3d 981, 283 N.E.2d 54 (1st Dist. 1972). Accordingly, Britt's motion for summary judgment is denied.

*Motion by Jones for Leave to Amend*

■ Jones has moved for leave to amend her complaint to add a count of negligence for Britt's failure to investigate the circumstances surrounding her dismissal. Fed.R. Civ.P. 15(a) provides that "leave to amend should be freely given" when the interests of justice so dictate. Although this rule has always been liberally applied, Britt asserts that leave should not be granted to Jones to amend on two grounds: first, that the motion is not timely; and second, that the motion is not justified by the existing law. Although the Court agrees that Jones' motion for leave to amend could have been brought earlier, it denies the motion not for that reason but because the added Count does not state a claim for relief under Illinois law.

Jones claims that Illinois law recognizes a tort action for Murrell's negligence in failing to follow through on the alleged investigation, even though that investigation was gratuitously undertaken. Illinois recognizes no such action in the area of employment.

Illinois has adhered strictly to the doctrine of employment at will, which permits an employer to discharge an employee for good reason, bad reason, or no reason at all. *Sargent v. Illinois Institute of Technology*, 78 Ill.App.3d 117, 33 Ill.Dec. 937, 397 N.E.2d 443 (1st Dist.1979). Illinois courts have been loathe to erode this doctrine, and have done so only where public policy so dictates, such as when the employer discharges an employee in retaliation for exercising rights under the Workmen's Compensation Act. *Kelsay v. Motorola*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). Illinois has also permitted actions to lie in contract where an express employment contract is involved. *Sargent v. Illinois Institute of Technology*, 78 Ill.App.3d 117, 33 Ill.Dec. 937, 397 N.E.2d 443 (1st Dist.1979). All of the cases cited by Jones are inapposite, and Jones has cited no Illinois case on point. Illinois law recognizes no duty of an employer to investigate circumstances surrounding the dismissal of his employees, even when that investigation is gratuitously undertaken for the benefit of the employee. Accordingly, Jones' motion for leave to amend is denied because amending the complaint to add a count which would be dismissed for failure to state a claim would be futile.

*Conclusion*

Britt's motion for summary judgment is denied, and Jones' motion for leave to amend her complaint to add a count in negligence is denied.