**Wonda ENIS, Plaintiff-Appellant,**

v.

**CONTINENTAL ILLINOIS NATIONAL BANK & TRUST COMPANY OF ILLINOIS, Defendant-Appellee.**

No. 85–2442.

United States Court of Appeals, Seventh Circuit.

Submitted May 6, 1986.

Decided July 3, 1986.

Marilyn F. Longwell, Kerr & Longwell, Chicago, Ill., for plaintiff-appellant.

James W. Gladden, Jr., Mayer, Brown & Platt, Chicago, Ill., for defendant-appellee.

Before POSNER and COFFEY, Circuit Judges, and PELL, Senior Circuit Judge.

POSNER, Circuit Judge.

Wonda Enis appeals from a judgment for Continental Illinois National Bank in her suit against Continental for wrongful discharge. The only issue on appeal is whether the district court was correct to dismiss, for failure to state a claim (see Fed.R. Civ.P. 12(b)(6)), the part of her complaint in which she alleged that the discharge was a breach of her employment contract under Illinois law. She had no employment contract, however—unless the employee handbook that Continental gave her when it hired her was a contract that forbade Continental to fire her without complying with the handbook's provisions on discharge.

■■■ Judge Bua thought not, 582 F.Supp. 876 (N.D.Ill.1984), and our policy is to give some though of course not complete deference to the interpretation of state law by a district judge sitting in the state whose law is in question. See, e.g., *Goldstick v. ICM Realty*, 788 F.2d 456, 466 (7th Cir.1986); *Morin Building Products Co. v. Baystone Construction, Inc.*, 717 F.2d 413, 416–17 (7th Cir.1983). Deference is particularly appropriate where the state's supreme court has not spoken to the issue and the intermediate appellate courts are divided. But this principle does not take us far in this case, since several of the key decisions of those courts were rendered after the district court dismissed Enis's breach of contract claim, and since other district judges in Illinois have reached a conclusion contrary to Judge Bua's. See *Pelizza v. Reader's Digest Sales & Services, Inc.*, 624 F.Supp. 806, 810 (N.D.Ill.1985), and cases cited there.

Five cases trace the wavering line (cf. *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251, 1263–64 (7th Cir.1985)) of the Illinois Appellate Court on the issue whether an employees' handbook or manual transforms employment at will into employment under contract. In *Carter v. Kaskaskia Community Action Agency*, 24 Ill.App.3d 1056, 322 N.E.2d 574 (1974), the Fifth District held that a manual issued after the plaintiff had begun to work for the defendant modified the previous employment-at-will relationship between the parties, and that the plaintiff's continuing to work was the consideration for the modification and made it enforceable. (Contract modifications are not enforceable in Illinois without consideration. See, e.g., *Fineman v. Citicorp. USA, Inc.*, 137 Ill.App.3d 1035, 92 Ill.Dec. 780, 485 N.E.2d 591 (1985); *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 776 F.2d 198, 208–09 (7th Cir.1985).) In *Sargent v. Illinois Institute of Technology*, 78 Ill.App.3d 117, 33 Ill.Dec. 937, 397 N.E.2d 443 (1979), the First District held that a manual issued before, rather than as in *Carter* after, the plaintiff had begun to work for the defendant did not alter the employment-at-will relationship, as the manual could hardly be viewed as a modification of a relationship not in existence when the manual was issued. The present case is the same as *Sargent* in this respect, so if all we had to go on were *Carter* and *Sargent*, Enis clearly would lose.

It is true that, considered as an issue of common sense rather than interpretation of precedent, the date of the manual in relation to when the plaintiff starts to work is unrelated to the essential question, which is whether the employer intended the employment manual to confer legally enforceable rights on the employee; if he did, the employee's either starting or continuing to work for the employer supplies the necessary consideration, enabling the rights to be enforced. See Note, *Employee Handbooks and Employment-at-Will Contracts*, 1985 Duke L.J. 196, 208–09, for sharp criticism of the logic of the Illinois cases. But even if we were free to disregard that logic, as we would be if (but only if) convinced that the Illinois Supreme Court would reject it, this would not help Enis. The obvious answer to the question as we have restated it is "no." The purpose of an employment manual is to explain the rules of employment to the employee—not to confer tenure, or arm the employee with grounds for suing the employer if the latter fails to follow the rules in the manual to the letter. The curious

implication of *Carter* is that the employer who issues an employment manual after the employee has started work cannot alter the manual without compensating the employee—otherwise the alteration would be an unenforceable modification because not supported by consideration, unless, perhaps, the employer earmarked a portion of the employee's next paycheck as compensation for the change. Thus the Illinois Supreme Court might not go as far as the Fifth District in *Carter*. It might instead decide to follow the supreme courts of Montana and Kansas, which have held that an employment manual issued after the employee starts work does not give the employee contract rights—without implying that a manual issued before he starts work does. See *Gates v. Life of Montana Ins. Co.*, 196 Mont. 178, 638 P.2d 1063, 1066 (1982); *Johnson v. National Beef Co.*, 220 Kan. 52, 55, 551 P.2d 779, 782 (1976).

In *Kaiser v. Dixon*, 127 Ill.App.3d 251, 82 Ill.Dec. 275, 468 N.E.2d 822 (1984), the Second District joined the fray in a decision following *Carter* on similar facts—that is, the manual had been issued after the plaintiff had gone to work for the defendant. Although *Kaiser*, like *Carter*, was consistent with *Sargent* (a "before" case), the Second District implied disagreement with the reasoning, and perhaps therefore the result, in *Sargent*. See 127 Ill.App.3d at 261–63, 82 Ill.Dec. at 283–84, 468 N.E.2d at 830–31. But then came *Johnson v. Figgie Int'l, Inc.*, 132 Ill.App.3d 922, 87 Ill.Dec. 669, 477 N.E.2d 795 (1985), where the Second District rejected the doctrinal expansion implied by *Kaiser* and held that a plaintiff could base a contract claim on his employer's plan or policy (as embodied for example in an employee handbook) only if the plan or policy was shown to be "either a part of, or a modification of, a pre-existing oral employment agreement." *Id.* at 927, 87 Ill.Dec. at 673, 477 N.E.2d at 799. Under *Figgie*, if a case does not fit the modification mold (*Carter, Kaiser*) the plaintiff must show that he bargained for the protections in the manual when he signed on with the employer. The court in *Figgie* reached this conclusion after describing both *Carter* and *Kaiser* as cases in which the manual had been issued after the employee had begun work (modification cases). The criticism of *Sargent* was not repeated and Judge Bua's decision in the present case was discussed with approval. See *id.* at 926–27, 87 Ill.Dec. at 672–73, 477 N.E.2d at 798–99.

That brings us finally to *Duldulao v. St. Mary of Nazareth Hospital Center*, 136 Ill.App.3d 763, 91 Ill.Dec. 470, 483 N.E.2d 956 (1985), where in a brief opinion the First District receded from its decision in *Sargent*, accepting the criticism of that decision by the Second District in *Kaiser* but failing to cite *Figgie*, which had in effect retracted that criticism. The opinion in *Duldulao* does not indicate when the manual was issued, but, consistently with its criticism of *Sargent*, treats the question as unimportant.

*Duldulao* is the only decision that supports Enis's claim, assuming that *Figgie* should be deemed an authoritative retraction of the criticism of *Sargent* made in *Kaiser*. Granted, by the same token *Duldulao* is a retraction of *Sargent;* but the failure of *Duldulao* to cite *Figgie* detracts from the force of *Duldulao*'s criticism of *Sargent*. In addition, *Duldulao* is not easily described as a reasoned decision, for all it says is that "the manual is binding upon the employer since it does impose obligations on both employee and employer," *id.* at 765–66, 91 Ill.Dec. at 472, 483 N.E.2d at 958—which is to say, it is binding because it is binding.

We doubt that the Illinois Supreme Court is prepared to go as far as the First District in *Duldulao*. The main effect of its doing so would be to discourage employers from issuing employee manuals, since by issuing them they would be giving contractual protection to all new employees (as well as to many old ones—the implication of *Carter* and *Kaiser*). Even in tenured professions like teaching, there ordinarily is a probationary period before the new employee receives contractual protection, but there would be none under the view casually taken in *Duldulao*. It is no an-

swer that employers can festoon their manuals with disclaimers of liability for violations of the terms and conditions set forth in the manual; courts frequently disregard disclaimers of liability, and anyway the disclaimers would not help the myriad of employers that had issued such manuals without foreseeing the possibility that by doing so they might be deemed to have granted a form of tenure to their employees.

 So, forced to guess, we would guess that the Illinois Supreme Court would follow the line taken in *Figgie* and by the district court in the present case: the employee manual creates contract rights only if it is either a part of a pre-existing employment contract (that is, if the relationship was not in fact one of employment at will) or an enforceable modification of the employment-at-will relationship. But we do not have to guess, for there is an alternative ground available to support the district court's result. The part of the employee handbook on which Enis relies provides that an employee will be dismissed, without any of the safeguards that Enis claims she was denied, in "serious situations that can provide grounds for immediate dismissal. These exceptions include instances of extreme insubordination and certain security-related incidents—such as stealing, or selling, purchasing, using, or transferring illegal drugs or drugs not authorized by a physician, during time at work or on any CICorp premises." The language cannot sensibly be limited to the instances given. That would imply that if an employee murdered a coworker he could not be immediately dismissed, because he was not being insubordinate, or stealing, or drug dealing. The words "include" and "such as" show that the specific instances are illustrative, not exhaustive.

What Enis did (as the trial on her other claims, which are not in issue in this appeal, showed) was not within the illustrations, but was a "serious situation." Her desk was found to contain all sorts of critical mail from customers to the bank, which she had locked there, including such things as notices of deadlines for filing claims in bankruptcy. Some of the items were two months old. Deadlines mentioned in the mail had passed. It is hard to imagine more serious misconduct by a bank employee, short of embezzlement; discreet though illegal drug use would probably have harmed the bank less. The bank did not violate the conditions in the manual even if, as we greatly doubt, those conditions are enforceable under the law of Illinois.

AFFIRMED.