SHIPKOVITZ, APPELLANT, *v.*
NORTH AMERICAN VAN LINES, INC.,
APPELLEE.

(No. 47003—Decided March 5, 1984.)

*Mr. James T. Patnode,* for appellant.

*Mr. Roy A. Hulme,* for appellee.

CORRIGAN, P.J. In August 1979 plaintiff-appellant, Samuel Shipkovitz, hired defendant-appellee, North American Van Lines, to move his personal belongings from his home in Cleveland to his new residence in Arlington, Virginia.[1] When the contents arrived in Virginia, appellant found that the furniture had been damaged (smashed), a carton containing gold pieces and a camera were missing, many of the labels on the cartons were missing or mislabeled, and anti-Semitic graffiti was attached to several boxes. Appellant contacted appellee's Cargo Claims Department which responded on October 26, 1979 with a check for $927 in partial settlement of appellant's claim. On January 9, 1980 appellee proffered a final payment of $297, which was rejected by appellant. After further discussion, appellee sent another check for $297 plus an additional sum of $177.85 "to complete the adjustment" of appellant's claim. Appellant cashed these checks but altered the language printed on back of the checks to reflect that it was only in *partial* settlement of his claims.

Appellant filed suit on May 27, 1981 requesting (1) $1,760 compensatory damages for the missing carton; (2) $2,775.50 compensatory plus $10,000 punitive damages for the alleged negligence of appellee and deliberate destruction of the evidence by "confusing" the labels on the cartons; (3) $15,000 compensatory plus $500,000 punitive damages for anger, embarrassment, insult, mental and emotional distress, anxiety and loss of sleep; and (4) $2,775.50 compensatory and $750,000 punitive damages for appellee's bad faith and outrageous conduct in the parties' relationship. Appellee filed a motion for summary judgment on December 29, 1982 asserting that appellant's acceptance of the final check served as an accord and satisfaction. Appellant responded with his own motion for "partial summary adjudication" charging that the partial settlement of February 1980 extended only to his cargo claim, exclusive of his claim for the missing carton and the alleged intentional tort.

On May 6, 1983 the court granted appellee's motion for summary judgment and dismissed the case. Appellant

---

[1] The cargo was packed and moved by defendant's agent, Cal-Lee Movers, but plaintiff was unable to achieve service of process in this action on the agent as it apparently went out-of-business.

timely filed his notice of appeal and assigns the following error for review:

"The trial court erred when it granted summary judgment to defendant on the basis of an alleged release, where plaintiff's sworn statement and the course of dealing evidenced by the documents in the record create a genuine issue whether the parties intended that the release should extend in its effect to the matters complained of."

Appellee argues that appellant relies on an incorrect basis for attacking the trial court's decision. Appellant maintains that a full *release* was not proven, while appellee's motion relied solely on the theory of accord and satisfaction. Thus, the trial court, in granting appellee's motion, must have been convinced that accord and satisfaction applied. There is no basis for appellant's assertion that the court decided the issues to be governed as a "release." However, appellant's general proposition that summary judgment was improperly granted, resulting in dismissal of the entire case, including the intentional tort claim, is well-taken.

Based on our review of the evidentiary materials submitted to the trial court, a genuine issue of material fact remained, *i.e.,* whether the accord and satisfaction related solely to the damages arising from appellant's contract with appellee or whether the parties intended to settle the intentional tort claim as well. Appellee's letter of January 9, 1980 indicated that the $297 check was for full and final settlement of appellant's claim for damage and loss. Then, on February 6, 1980, appellee requested substantiation of the value of the items in the missing carton. The final correspondence of February 14, 1980 indicated that the $177.85 check was to complete the adjustment of appellant's claim. Thus, there was absolutely no evidence to warrant the court's apparent conclusion that the accord and satisfaction reached in regard to the involved negotiations over the property loss and damage was intended by both parties to include the separate claim for intentional tort spelled out in the complaint.

An accord and satisfaction is the result of an agreement of the parties and must be consummated by a meeting of the minds of the parties. *Warner Elevator Mfg. Co.* v. *Higbee* (1935), 53 Ohio App. 546, 548 [7 O.O. 355]. Since there was no evidence connecting the intentional tort claim with the accord and satisfaction, an issue of fact remained, rendering summary judgment inappropriate.

Accordingly, judgment is reversed and the cause is remanded for trial.

*Judgment reversed and cause remanded.*

PATTON, J., concurs.

NAHRA, J., dissents.

NAHRA, J., dissenting. This seems to me to be a simple contract matter. The plaintiff essentially said to defendant: "If you don't agree to my property damage claim, I'll sue you for an intentional or personal-type tort as well." The parties did agree on the property damage claim and plaintiff accepted the money after altering the "full and final settlement" language on the check.

Plaintiff's acceptance and cashing of defendant's check effected an accord and satisfaction of plaintiff's property damage claim. Plaintiff's altering of the "full and final settlement" language does not change that fact. *Platt* v. *Penetryn System, Inc.* (1949), 151 Ohio St. 451 [39 O.O. 273]; *Hudak* v. *Nationwide Mut. Ins. Co.* (1960), 112 Ohio App. 306 [13 O.O.2d 434]. Plaintiff's intentional tort claims arose from the defendant's conduct in settling the matter and the upset the property damage caused to plaintiff. Since an accord and satisfac-

tion was reached regarding the underlying property damage claim, I believe that settlement also encompasses the intentional tort claims which, here, stem from the property damage claim and are ancillary to the property damage claim. I find nothing in the conduct of the parties to indicate that plaintiff has "reserved" his intentional tort claims, if such a thing is even possible, while settling his property damage claim through an accord and satisfaction. Under the facts presented, I would find the plaintiff's mental reservation to be of no consequence and hold the accord and satisfaction concluded the matter.