RENNER, APPELLANT, *v.*
PROCTER AND GAMBLE COMPANY,
APPELLEE.

(No. 1387—Decided
September 13, 1988.)

*Sowash Law Offices, Nancy Pierce* and *Richard R. Renner, pro se,* for appellant.

*Mollica, Gall, Sloan & Sillery Co, L.P.A., Gerald A. Mollica* and *Robert J. Gall,* for appellee.

STEPHENSON, J. This is an appeal from a judgment entered by the Athens County Municipal Court granting the motion of the Procter & Gamble Company, defendant below and appellee herein, for summary judgment with respect to the third amended complaint of Richard R. Renner, plaintiff below and appellant herein, which averred violations by appellee of the Ohio Consumer Sales Practices Act, Ohio Adm. Code 109:4-3-04(C), and Ohio Adm. Code 109:4-3-02(A)(1). The trial court further overruled appellant's motion for partial summary judgment. Appellant assigns the following errors:

"I. The trial court erred in granting the defendant's motion for summary judgment.

"II. The trial court erred in failing to grant the plaintiff's motion for summary judgment."

On November 1, 1985, appellant filed a complaint averring that in the summer of 1985 appellee had mailed him a Luv's disposable diaper coupon, that the coupon referenced terms of the offer by asterisk, that the coupon contained a term that could reasonably create an impression that the consumer would pay for an item advertised as "free," and that appellee thereby committed unfair and deceptive acts or practices in violation of R.C. 1345.02. Appellant's complaint prayed for, *inter alia,* $400 in statutory damages, a judgment declaring that the coupon, by reasonably creating the impression that the consumer will pay for an item advertised as "free" was an unfair and deceptive act or practice in violation of R.C. 1345.02, injunctive relief, and reasonable attorney fees.

On December 30, 1985, appellant filed his first amended complaint, seeking an additional $200 in statutory damages in that the coupon contained restrictions printed in a typeface less than one half the size of the word "free" in violation of Ohio Adm. Code 109:4-3-04(C). On January 10, 1986, appellee filed an answer to appellant's first amended complaint averring, *inter alia,* that appellant's claim was barred by the doctrine of accord and satisfaction because he accepted valuable consideration from appellee after he had brought to appellee's attention the dispute over the coupon. On the same date appellee filed a counterclaim which averred that appellant's action was groundless and brought in bad faith, and prayed for reasonable attorney fees pursuant to R.C. 1345.09(F)(1).

On February 3, 1986, appellant filed a reply to appellee's counterclaim and also filed his own "counterclaim." On February 18, 1986, appellee filed a motion to strike appellant's "counterclaim" as insufficient and improper. On February 28, 1986, appellant filed a second amended complaint. On March 13, 1986, the trial court ordered appellant's "counterclaim" stricken pursuant to Civ. R. 12(F).

On March 14, 1986, appellant filed a third amended complaint, the "FIRST CAUSE" of which averred that the Luv's disposable diaper coupon sent to him in the summer of 1985 contained restrictions printed in a typeface less than half the size of the

word "FREE" in violation of Ohio Adm. Code 109:4-3-04(C), referenced terms of the offer by asterisk in violation of Ohio Adm. Code 109:4-3-04(C), and contained a term that could reasonably create the impression that the consumer would pay for the item advertised as "FREE" in violation of Ohio Adm. Code 109:4-3-02(A)(1) and, further, that appellant had thereby committed unfair and deceptive acts or practices in violation of R.C. 1345.02. Appellant's third amended complaint's "SECOND CAUSE" averred that two coupons mailed to him from appellee on October 24, 1985 were intended by appellee as an accord and satisfaction, and that such coupons were in violation of Ohio Adm. Code 109: 4-3-02(A)(1), Ohio Adm. Code 109:4-3-04(C), R.C. 1345.02, and R.C. 1345.03. Appellant prayed for $1,800 in statutory damages, injunctive relief prohibiting appellee from using dangling participles in coupons and from otherwise committing any unfair or deceptive acts or practices in connection with a consumer transaction, and reasonable attorney fees.

On July 31, 1986, the parties filed written stipulations which provided as follows:

"1. The Procter & Gamble Company is a 'supplier' as defined in R.C. 1345.01(C).

"2. Richard Renner is a 'consumer' as defined in R.C. 1345.01(D).

"3. The transactions referred to in the plaintiff's third amended complaint are 'consumer transactions' as defined in R.C. 1345.01(A).

"4. The coupon package attached as exhibit A is an 'advertisement' as defined in Ohio Administrative Code 109:4-3-01(C)(5).

"5. The coupons shown in exhibit E are 'advertisements' as defined in Ohio Administrative Code 109:4-3-01 (C)(5).

"6. Exhibit A is a genuine copy of the coupon package Procter & Gamble sent to Richard Renner, and that Richard Renner received in the late summer or early autumn of 1985.

"7. Exhibit B is a genuine copy of the letter Richard Renner sent to Procter & Gamble on October 7, 1985. Procter & Gamble received the letter.

"8. Exhibit C is a genuine copy of the letter David G. Hemminger, an attorney for Procter & Gamble, sent to Richard Renner on October 11, 1985. Richard Renner received the letter.

"9. Exhibit D is a genuine copy of the letter Thomas J. Mess, an attorney for Procter & Gamble, sent to Richard Renner on October 24, 1985. Richard Renner received the letter.

"10. Exhibit E is a genuine copy of two coupons that were enclosed with exhibit D. Richard Renner received these coupons.

"11. Exhibit F is a genuine copy of Procter & Gamble's current statement of coupon requirements, a copy of which Procter & Gamble supplied to the Athens Kroger and Super Duper stores prior to September of 1985.

"12. On or about October 1, 1985, Richard Renner tried to redeem the coupon in Exhibit A at the Super Duper supermarket in Athens. Richard Renner selected a basic size box of Luv's diapers, which Procter & Gamble intended Richard Renner to receive free with his coupon. Richard Renner presented the coupon and basic size box to the Super Duper cashier. After reading the coupon, the cashier told Richard Renner that the coupon was worth only $3.75 against the price of the basic size box, $4.29. Richard Renner disagreed and asked the cashier to re-read the coupon and allow the box to be entirely free. The cashier consulted with her supervisor, and again advised Richard Renner that the coupon was limited to $3.75, even for the basic size box. Richard Renner elected not to pay for the box and received his coupon back.

"13. On or about October 6, 1985,

Richard Renner redeemed the coupon in Exhibit A at the Kroger store in Athens. The price Kroger placed on the basic size box was $4.19. When Richard Renner presented the coupon and basic size box at the Kroger cash register, he was required to pay sales tax as specified in the coupon, but otherwise received the box free.

"14. When Thomas J. Mess sent exhibits D and E to Richard Renner, he intended to satisfy Richard Renner and to resolve any dispute between Procter and Gamble and Richard Renner. Richard Renner received the coupons, and neither redeemed, returned, nor offered to return them to Procter & Gamble. He did not redeem the coupons because he intended to file a civil action against Procter & Gamble and wanted to save the coupons as evidence, and because he was concerned about a defense of accord and satisfaction and was not certain whether or not the coupons would be used in that way. Richard Renner carried one of the coupons in his wallet for a few months so he could use it if he was desperate and needed a box of diapers for his young daughter.

"15. Richard Renner has a daughter, who was born on November 27, 1984.

"16. After July 15, 1985, Procter & Gamble mailed between four and five million coupon packages like Exhibit A. About 10,000 of those coupon packages were mailed to Athens County.

"17. Procter & Gamble maintains a system to avoid confusing language in direct-mail coupons. First, members of the Promotion Marketing Group in the General Advertising Division work with those Procter & Gamble employees who are in charge of the specific brand being promoted. The Promotion and Marketing Group develops art work for the coupon. They attempt to make the coupon clear and understandable. Second, if the members of the Promotion and Marketing Group working on a coupon are concerned that consumers or retailers might misinterpret the coupon, then they present the art work to other members of the Promotion and Marketing Group who have even more experience with consumer perception. If the Promotion and Marketing Group is still concerned about clarity, the art work is tested before an internal or external focus group. Finally, all advertisements of the kind in exhibit A are cleared by Procter & Gamble's legal department.

"18. Exhibit A was examined by the Promotion and Marketing Group and the legal department, but was not tested before internal or external focus groups.

"19. Exhibit A is an example of what Procter & Gamble intended to be, and still believes is, an alternative coupon with a maximum discount on the alternative offer.

"20. Exhibit A was developed to induce consumers to try Luvs, which Procter & Gamble had improved. The primary purpose of the coupon was to allow consumers to try Luvs free. The secondary purpose was to allow the consumer to have a substantial discount if the retailer did not carry a box of basic size, or if the consumer wanted to try a larger box.

"21. Procter & Gamble intended the alternative offer in Exhibit A to allow consumers a discount on a box larger than a basic size box, equal to the lesser of the store price of a basic size box and $3.75. The $3.75 figure was not based upon any price survey but was chosen as a value sufficiently attractive to encourage consumers to redeem the coupon on a larger box, and thereby, try improved Luvs. During the first three months of 1986, coupons like Exhibit A were redeemed for an average retail price of $3.47. Following its standard practice, Procter & Gamble did not request from the

company that processes its coupons, specific redemption price information on exhibit A from September, 1985 to February, 1986 for the Athens Super Duper store.

"22. Periodically, Procter & Gamble's brand groups commission outside services to conduct a survey of prices retailers charge for various products. The purpose of the survey is to determine whether retailers are charging a 'feature price' for the given product. The 'feature price' is lower than the regular price, and is achieved by Procter & Gamble's giving price breaks to retailers. The purpose of a price survey is to be sure the price break is passed through to consumers. Price surveys are not used to establish a discount level to be used on a coupon, and Procter & Gamble did not consult any price survey before deciding on the value of the alternative offer on exhibit A.

"23. After receiving exhibit B, Procter & Gamble instructed a sales representative to contact the Super Duper store in Athens, Ohio, to explain the proper way to redeem the coupon contained in exhibit A. He did so.

"24. Procter & Gamble uses a document retention policy. Under that policy, written approvals and other documents relevant to promotional art work, like exhibit A, are destroyed about three months after the promotional art work is placed on film for printing.

"25. Procter & Gamble's Consumer Services Division responds to consumer comments about products and promotions. Coupons like exhibit A are considered promotions. When a written complaint is received by the Consumer Services Division, a letter is written to the consumer. The consumer's letter is discarded. The Consumer Services Division's policy is to record the number of written and oral complaints about a promotion only if the complaints reach 25 per month.

During the entire six month promotion involving exhibit A, the Consumer Services Division received fewer than the threshold number of complaints each month, so the number of complaints was not recorded. The employees of the Consumer Services Division recall fewer than 25 complaints during the entire promotion; Procter & Gamble has retained no records that confirm or deny the recollection.

"26. A complaint about exhibit A was received from a consumer in Alaska who found an exhibit A coupon to be confusing. The Consumer Services Division responded with a letter and discarded the consumer's letter as provided by the general procedure.

"27. For over 20 years, Procter & Gamble has used coupons like exhibit A that offered free goods with an alternative offer with a maximum discount stated. Procter & Gamble has tried, but cannot locate records that show either when the first such coupon was used or how many such coupons have been used over the years. During 1985, however, Procter & Gamble made available approximately 10 million of that kind of coupon on different products. If complaints were received about the alternative offer coupon over the years the Consumer Services Division decided they were too few to be recorded.

"28. During 1985, Procter & Gamble mailed approximately 2.5 billion coupons.

"29. The exhibit A coupons, like all Procter & Gamble coupons, have been destroyed because Procter & Gamble has concluded that the cost of returning [sic] the coupons far outweighs any benefit of retaining them.

"30. In Procter & Gamble's experience, consumers redeem coupons for free items up to 50% faster than they redeem 'cents off' coupons.

"31. Procter & Gamble maintains a toll free number for consumers to call

to comment about products. The number is printed on Procter & Gamble's products, but was not printed on the coupons contained in exhibits A and E.

"32. Procter & Gamble bases its defense of accord and satisfaction solely upon exhibits B, C, D, and E, and upon the way in which Richard Renner treated the coupons he received in exhibit E. When Procter & Gamble sent the coupons in exhibit E to Richard Renner, it intended to consummate an accord and satisfaction.

"33. Exhibit A was sent to families on a mailing list. The families had children under 26 months of age.

"34. Procter & Gamble does not know whether it will ever again use coupons that contain an offer of free goods with an alternative offer with a maximum discount. Procter & Gamble intends not to use in the future, coupons exactly like exhibit A, whether for Luvs or another product.

"35. Procter & Gamble has tried, but cannot locate, any records showing when the Athens Super Duper store began redeeming exhibit A coupons for more than $3.75. Procter & Gamble has located one exhibit A coupon the Athens Super Duper store redeemed for $4.59 in April, 1986.

"36. Exhibit A does not contain errors of type face or type size.

"37. When Procter & Gamble sent exhibits A, C, D, and E to Richard Renner, it was actually aware of the contents of the exhibit and that the exhibits were being sent to Richard Renner.

"38. An hourly rate of $50.00 is reasonable for Richard Renner. An hourly rate of $50.00 is reasonable for Robert Gall, and an hourly rate of $75.00 is reasonable for Gerald Mollica."

The coupon offers specified as "Exhibit A" and "Exhibit E" in the written stipulations are reproduced in full in the Appendix to this opinion. In his October 7, 1985 letter to appellee, appellant demanded statutory damages of $200 for alleged violations of the Ohio Consumer Sales Practices Act. In an October 24, 1985 letter from Thomas E. Mess, an employee of appellee, he enclosed the coupons in "Exhibit E" and stated to appellant, in pertinent part, as follows:

"We have now had a chance to thoroughly investigate the problem you had redeeming the free Luvs coupon at the local Super Duper store in Athens. We apologize for the inconvenience this has caused you, but Super Duper misread the coupon. The coupon entitles you to one free box of basic size Luvs disposable diapers, regardless of the price the store charges. Only if you attempted to purchase the convenience size (box containing 32 diapers or more) would the $3.75 limitation be applicable. While the consumer is responsible for the sales tax as required by Ohio Law, there is no charge for the price of the box of diapers itself.

"A Procter & Gamble sales representative will be contacting Super Duper within the next two weeks to advise them of the proper redemption of the Luvs coupon. You should not have another problem with Super Duper in redeeming our coupons.

"Due to the inconvenience this problem has caused you, please accept two coupons for Luvs disposable diapers in the convenience pack."

On August 26, 1986, appellee filed a motion for summary judgment. On September 23, 1986, appellant filed a motion for partial summary judgment, asking for $1,800 in statutory minimum damages, a judgment declaring that various acts and practices of appellee violated R.C. 1345.02, and injunctive relief prohibiting appellee from committing any unfair or deceptive act or practice in connection with a consumer transaction. On November

26, 1986, the trial court filed a decision and judgment entry granting appellee's motion for summary judgment, denying appellant's motion for partial summary judgment, and dismissing appellant's third amended complaint. Appellant filed a timely notice of appeal from such judgment.

On January 28, 1988, this court dismissed the appeal on the ground that it was not a final appealable order because an outstanding counterclaim by appellee had not been adjudicated. See *Renner* v. *Procter & Gamble Co.* (Jan. 27, 1988), Athens App. No. 1350, unreported. On February 11, 1988, appellee filed a notice of dismissal with respect to its counterclaim; appellant filed an amended notice of appeal. On February 16, 1988, this court filed a journal entry directing the clerk of courts herein to treat the amended notice of appeal as the original notice of appeal in such case.

Appellant's first assignment of error asserts that the trial court erred in granting appellee's motion for summary judgment and appellant's second assignment of error asserts that the trial court erred in failing to grant appellant's motion for summary judgment. In that appellant's two assignments of error are not argued separately and involve similar issues of law and fact, they will be jointly considered. Appellant argues that the trial court erred in not finding that appellee had violated Ohio Adm. Code 109:4-3-04(C) where such rule on the use of the word "free" was not limited to combination offers and that the trial court further erred in dismissing claims under Ohio Adm. Code 109:4-3-02(A)(1) where the coupon offer left a reasonable probability that its terms would be misunderstood and the two additional coupons failed to indicate that their acceptance would result in a claim of accord and satisfaction.

Civ. R. 56(C) provides, in pertinent part, as follows:

"* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

The Consumer Sales Practices Act, R.C. 1345.01 *et seq.,* which became effective on July 14, 1972, was the first comprehensive consumer protection law enacted in Ohio. Tongren & Samuels, The Development of Consumer Protection Activities in the Ohio Attorney General's Office (1976), 37 Ohio St. L.J. 581, 587. The Uniform Consumer Sales Practices Act, an effort to crystallize the best elements of contemporary federal and state regulation of consumer protection in order to effectuate harmonization and coordination of federal and state regulation, served as the basis for Ohio's Consumer Sales Practices Act. Tongren & Samuels, *supra,* at 585; Uniform Consumer Sales Practices Act (1985), 7A Uniform Laws Annotated, at 231 *et seq.*

The Ohio Consumer Sales Practices Act affects the substantive law of fraud, deception, and unconscionability relevant to consumer transactions. Buckley, Recent Consumer Protection

Legislation in Ohio (1973), 22 Cleve. St. L. Rev. 393, 395-396. The Act provides for individual consumer remedies, class action remedies, public enforced remedies, and for remedies which combine individual and public elements, establishing a Consumer Protection Division within the Commerce Department to administer the Act and authorizing the Attorney General to initiate public enforcement proceedings. Buckley, *supra,* at 396. The Consumer Sales Practices Act is remedial legislation and, as such, should be accorded a liberal construction. *Brown* v. *Lancaster Chrysler-Plymouth, Inc.* (C.P. 1976), 4 O.O. 3d 70, 71; *Liggins* v. *May Co.* (C.P. 1977), 53 Ohio Misc. 21, 23, 7 O.O. 3d 164, 166, 373 N.E. 2d 404, 405; *Brown* v. *Market Development, Inc.* (C.P. 1974), 41 Ohio Misc. 57, 63, 68 O.O. 2d 276, 280, 322 N.E. 2d 367, 371; R.C. 1.11.

R.C. 1345.02(A) provides as follows:

"No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

The Ohio Attorney General may adopt, amend, and repeal substantive rules defining with reasonable specificity acts or practices that violate R.C. 1345.02 and 1345.03. R.C. 1345.05(B)(2). Accordingly, pursuant to the authority granted under R.C. 1345.05(B)(2) and R.C. Chapter 119, substantive rules have been adopted by the Attorney General in order to implement the prohibition against unfair or deceptive sales practices of R.C. 1345.02(A) with these rules detailing deceptive acts or practices in connection with consumer transactions. *Simpson* v. *Smith* (M. C. 1987), 34 Ohio Misc. 2d 7, 9-10, 517 N.E. 2d 276, 278-279; see, also, *Riley* v. *Enterprise Furniture Co.* (M.C. 1977), 54 Ohio Misc. 1, 7 O.O. 3d 271, 375 N.E. 2d 821; *Weaver* v. *J. C. Penney Co.* (1977), 53 Ohio App. 2d 165, 6 O.O. 3d 270, 372 N.E. 2d 633; *Clayton* v. *McCary* (N.D. Ohio 1976), 426 F. Supp. 248.

These substantive rules are liberally construed and applied to promote their purposes and policies, with such purposes and policies being to: (a) define with reasonable specificity acts and practices which violate R.C. 1345.02 or 1345.03; (b) protect consumers from suppliers who engage in referral selling, commit deceptive acts or practices, or commit unconscionable acts or practices; and (c) encourage the development of fair consumer sales practices. Ohio Adm. Code 109: 4-3-01(A).

One of the substantive rules promulgated by the Attorney General pursuant to his rule-making authority is Ohio Adm. Code 109:4-3-04, which is titled as "Use of word 'free' etc." and provides, in pertinent part, as follows:

"(A) It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to use the word 'free' or other words of similar import or meaning, except in conformity with this rule. It is the express intent of this rule to prohibit the practice of advertising or offering goods or services as 'free' when in fact the cost of the 'free' offer is passed on to the consumer by raising the regular (base) price of the goods or services that must be purchased in connection with the 'free' offer. In the absence of such a base price a 'free' offer is in reality a single price for the combination of goods or services offered and the fiction that any portion of the offer is 'free' is inherently deceptive.

"(B) For the purposes of this rule, all references to the word 'free' shall include within that term all other words of similar import and meaning. Representative of the word or words to which this rule is applicable would be the following: 'Free;' 'Buy 1, Get 1

Free;' '2 for 1 Sale;' 50% Off with Purchase of 2.' Offers of 'free' items of goods or services which may be deceptive for failure to meet the provisions of this rule may not be corrected by the substitution, for the word 'free' of such similar words and terms as 'gift,' 'given without charge,' 'bonus,' or other words and terms which tend to convey to the consuming public the impression that an item of goods or services is 'free.'

"(C) *When using the word 'free' in a consumer transaction, all the terms, conditions, and obligations upon which receipt and retention of the 'free' goods or services are contingent shall be set forth clearly and conspicuously at the outset of the offer. Terms, conditions, and obligations of the offer must be printed in a type size half as large as the word 'free,' and all of the terms, conditions, and obligations should appear in close conjunction with the offer of 'free' goods or services.* Disclosure of the terms of the offer set forth in a footnote of an advertisement to which reference is made by an asterisk or other symbol placed next to the offer is not regarded as making disclosure at the outset." (Emphasis added.)

Appellant asserts that appellee's initial coupon for Luv's disposable diapers, which appellee sent as part of a mass mailing after July 15, 1985, was in violation of Ohio Adm. Code 109:4-3-04(C), since the description accompanying the offer, *i.e.,* "ONE BOX OF BASIC SIZE LUVS disposable diapers or equivalent off any larger size (up to $3.75)," was not in a type size half as large as the word "FREE" on the coupon. Appellant admits that appellee's coupon offer did not constitute a combination sale in that it did not require the purchase of other merchandise in order to acquire the item advertised as free, but contends that the trial court erred in holding that Ohio Adm. Code 109:4-3-04(C) is limited to combination sales, where its language specifies it covers the use of the word "free" in consumer transactions.

In adopting, amending, or repealing substantive rules defining with reasonable specificity acts or practices that violate R.C. 1345.02, the Attorney General gives due consideration and great weight to Federal Trade Commission orders, trade regulation rules and guides, and the federal courts' interpretations of Section 45 (a)(1) of the "Federal Trade Commission Act" (1914), 38 Stat. 717 (Section 41, Title 15, U.S. Code), amended. R.C. 1345.05(B)(2); see, also, R.C. 1345.02(C). By pooling both federal and state law, in the form of statutes, regulations, and judicial interpretation of both, a reasonably well defined understanding of what acts or practices are deceptive or unconscionable has developed. *Brown* v. *Barnum & Crow, Inc.* (C.P. 1980), 22 O.O. 3d 24, 26.

Ohio Adm. Code 109:4-3-04, as appellee notes, appears to have been taken from the Federal Trade Commission Guide that is set forth in 16 CFR Section 251.1, Title 16 C.F.R., with subsection C of Ohio Adm. Code 109:4-3-04 patterned after 16 CFR 251.1(c). As noted in the introductory paragraph of the Federal Trade Commission Guide, the manifest application of its requirements are to combination sales:

"(a) *General.* (1) The offer of 'Free' merchandise or service is a promotional device frequently used to attract customers. *Providing such merchandise or service with the purchase of some other article or service has often been found to be a useful and valuable marketing tool."* (Emphasis added.)

Other courts that have applied rules similar to Ohio Adm. Code 109:4-3-04(C) concerning the use of the word "free" in a coupon or advertisement have invariably involved com-

bination sales. See, *e.g., Fineman* v. *Citicorp USA, Inc.* (1985), 137 Ill. App. 3d 1035, 485 N.E. 2d 591; *State, ex rel. Abrams,* v. *Stevens* (S.Ct. 1985), 130 Misc. 2d 790, 497 N.Y. Supp. 2d 812. Indeed, the Supreme Court of Wisconsin in *State* v. *Amoco Oil Co.* (1980), 97 Wis. 2d 226, 248-249, 293 N.W. 2d 487, 498, held that "16 CFR 251.1(c) states that *in making a combination sale* 'all the terms, conditions and obligations * * * should be set forth clearly and conspicuously at the outset of the offer. * * *' '' (Emphasis added.) Therefore, application of the relevant Federal Trade Commission Guide Section 251.(1)(c), Title 16, C.F.R. to which great weight and due consideration must be accorded pursuant to R.C. 1345.02(C) and 1345.05(B)(2), is apparently restricted to combination sales.

An examination of the entirety of Ohio Adm. Code 109:4-3-04 also indicates that while subsection (C) contains the broad language concerning use of the word "free" in a "consumer transaction," the rule is meant only to address combination sales in that subsection (A) states that it is the "express intent of this rule to prohibit the practice of advertising or offering goods or services as 'free' when in fact the cost of the 'free' offer is passed on to the consumer by raising the regular (base) price of the goods or services that must be purchased in connection with the 'free' offer." Moreover, subsections (D), (E), (H), and (I) all explicitly address combination sales.

Certainly, as appellant notes, each substantive rule and every part of each substantive rule is an independent rule and paragraph of a rule, Ohio Adm. Code 109:4-3-04(C), but the "paragraph of a rule" provided by subsection (C), when taking into consideration the entirety of that rule as well as relevant law with regard to the Federal Trade Commission Guide, is limited to combination sales, and the trial court did not err in recognizing such limitation. Such holding does not contravene the liberal construction to be accorded the rules, where the manifest purpose of such rule was to prohibit deceptive acts with regard to using "free" in a combination sale context, although it may well have been preferable for the Attorney General to have used more precise language in Ohio Adm. Code 109:4-3-04(C).

Moreover, assuming *arguendo* that Ohio Adm. Code 109:4-3-04(C) was applicable to non-combination sales, we agree with appellee that the initial Luvs disposable diaper coupon must be read in conjunction with the attached advertisement which was sent to appellant, where the term "FREE" therein is not more than twice the type size of the description and no price restriction is mentioned with regard to the "FREE" offer, which leads us to the conclusion that appellee's coupon did not violate Ohio Adm. Code 109:4-3-04(C).

As to appellant's argument that the trial court erred in dismissing claims under Ohio Adm. Code 109:4-3-02(A)(1), this rule provides as follows:

*"It is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods or services, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions.* Disclosure shall be easily legible to anyone reading the advertising or promotional literature and shall be sufficiently specific so as to leave no reasonable probability that the terms of the offer might be misunderstood." (Emphasis added.)

In that appellee intended the coupon offer to give consumers like ap-

pellant a free basic size box of Luvs disposable diapers, there were arguably no "material exclusions, reservations, limitations, modifications, or conditions" attached to the offer. More importantly, however, we agree with the trial court that the $3.75 limitation was of sufficient clarity and conspicuousness so that it left "no reasonable probability" that its terms would be misunderstood to apply such limitation to the free basic size disposable diaper offer, rather than merely to the alternative offer. We would emphasize, in this regard, that appellee had nothing to gain from Super Duper's apparent misunderstanding of the coupon offer and that of 2.5 billion similar coupons mailed by appellee, complaints regarding the alternative offer coupon had been too few to be recorded.

Appellant finally argues that the two coupons for free Luvs disposable diapers received by him after he had sent appellee a letter complaining about the first coupon violated Ohio Adm. Code 109:4-3-02(A)(1) by failing to disclose that acceptance of such coupons might constitute an accord and satisfaction. An accord is an agreement for giving and taking a thing in satisfaction of an existing claim or debts; the satisfaction is the execution of such agreement. *Aerosonic Instrument Corp.* v. *NuTone, Inc.* (C.P. 1958), 80 Ohio Law Abs. 289, 290, 152 N.E. 2d 739, 740.

The four essential elements for an accord and satisfaction are: (1) a proper subject matter; (2) competent parties; (3) an assent or meeting of the minds of the parties; (4) a consideration. *State, ex rel. Shady Acres Nursing Home, Inc.* v. *Rhodes* (1983), 7 Ohio St. 3d 7, 8, 7 OBR 318, 319, 455 N.E. 2d 489, 490. *Aerosonic, op. cit.* An accord and satisfaction is the result of an agreement of the parties and must be consummated by a meeting of the minds of the parties. *Shipkovitz* v. *North American Van Lines, Inc.* (1984), 15 Ohio App. 3d 121, 122, 15 OBR 211, 212-213, 472 N.E. 2d 1119, 1121; *Kirk Williams Co.* v. *Six Industries, Inc.* (1983), 11 Ohio App. 3d 152, 11 OBR 233, 463 N.E. 2d 1266.

There is nothing to indicate that the two subsequent coupons sent by appellee contained any "material exclusions, reservations, limitations, modifications, or conditions" that were not stated clearly and conspicuously in compliance with Ohio Adm. Code 109:4-3-02(A)(1). Appellant cites no law and we are aware of none which would require that the possibility that the acceptance of coupons might result in a legal defense such as accord and satisfaction would have to be specifically stated in the coupons. In this regard, a consumer's argument that there was "no meeting of the minds" or an agreement that acceptance of coupons would discharge a prior claim would appear more than adequate.

In sum, with respect to all of appellant's assertions on appeal that the trial court erred in failing to find that appellee had violated the Consumer Sales Practices Act and rules promulgated thereunder, we find that there is no genuine issue of material fact and that the trial court thus properly entered summary judgment in appellee's favor. For the foregoing reasons, appellant's first and second assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

GREY, P.J., and ABELE, J., concur.

8304PT.

| MANUFACTURER COUPON | NO EXPIRATION DATE. |

PLEASE WRITE
IN RETAIL PRICE

8304PT

# FREE *Luvs*

## ONE CONVENIENCE PACK

FREE

CONSUMER: Don't embarrass your dealer, redeem this coupon ONLY on the brand and size(s) indicated, with its value deducted from the retail selling price. Coupon may not be reproduced. Void if transferred to any person, firm or group prior to store redemption. You pay any sales tax. Any other use constitutes fraud. LIMIT ONE COUPON PER PURCHASE.
DEALER: Your redemption signifies compliance with P&G Coupon Requirements dated 10/1/83. Free copy available by writing to PROCTER & GAMBLE 2150 Sunnybrook Drive, Cincinnati, Ohio 45237. Send properly redeemed coupons to same address. Cash Value 1/100 of 1¢.   8509-

**PROCTER & GAMBLE**

5

37000 48200

---

8304PT

| MANUFACTURER COUPON | NO EXPIRATION DATE · |

PLEASE WRITE
IN RETAIL PRICE

8304PT

# FREE *Luvs*

## ONE CONVENIENCE PACK

FREE

CONSUMER: Don't embarrass your dealer, redeem this coupon ONLY on the brand and size(s) indicated, with its value deducted from the retail selling price. Coupon may not be reproduced. Void if transferred to any person, firm or group prior to store redemption. You pay any sales tax. Any other use constitutes fraud. LIMIT ONE COUPON PER PURCHASE.
DEALER: Your redemption signifies compliance with P&G Coupon Requirements dated 10/1/83. Free copy available by writing to PROCTER & GAMBLE 2150 Sunnybrook Drive, Cincinnati, Ohio 45237. Send properly redeemed coupons to same address. Cash Value 1/100 of 1¢.   8509

**PROCTER & GAMBLE**

5

37000 48200

APPENDIX - EXHIBIT E