ELLEN FINEMAN *et al.*, Plaintiffs-Appellants, v. CITICORP *et al.*, Defendants-Appellees.

First District (3rd Division)  No. 84—2155

Opinion filed November 6, 1985.

1036

George F. Archer, of Chicago, for appellants.

Shalom L. Kohn and Ted K. Yasuda, both of Sidley & Austin, of Chicago, for appellees.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Plaintiffs Ellen and Gabriel Fineman filed a complaint for declaratory judgment against defendants Citicorp and Citibank (South Dakota), N.A. The trial court dismissed the complaint with prejudice and plaintiffs appeal. We affirm.

The facts are not in dispute. In 1981, plaintiffs were holders of "Citibank-Citicorp" MasterCards issued by defendant Citibank (South Dakota), N.A. In May 1981, defendants demanded and plaintiffs paid an annual fee of $15 for the card. They received cards with expiration dates of October 31, 1982. The use of the cards was governed by the Citibank "Retail Installment Credit Agreement." In the agreement, defendants stated:

> "*Amendment.* We can change this Agreement including the *finance charge* and the *annual percentage rate* at any time. However, if we do we will mail you written notice at least *30* days before the beginning of the billing cycle in which the changes becomes effective. If you do not agree to the changes, you must notify us in writing and return the card cut in half within *30* days and pay us the balance \*\*\*. Otherwise we will understand that you agree to the changes in the notice." (Emphasis in original.)

In January 1982, defendants sent plaintiffs a notice that defendants were increasing the annual fee from $15 to $20, effective March

2, 1982, for all cardholders, regardless of expiration dates. The notice was accompanied by a letter and a brochure which described "10 valuable extra services" available to those who paid the increased fee, including "free $100,000 common carrier travel insurance." The notice advised cardholders that "[o]nly cardmembers agreeing to the new terms will be covered by the $100,000 Common Carrier Insurance." The notice also stated:

> "If you do not wish to agree to the new terms you must notify us *in writing by March 2, 1982* \*\*\*. You can continue using your cards under the existing terms until the expiration date printed on your cards, even if you do notify us that you do not agree to the new terms." (Emphasis in original.)

Plaintiffs did not write to Citibank. On March 2, 1982, plaintiffs had a credit balance on their credit card account with defendants. Defendants subtracted $0.83 from the balance as payment for plaintiffs' prorated portion of the increase in the annual fee from March 2 until plaintiffs' "anniversary date," which was May 1, 1982.

On April 16, 1983, plaintiffs filed their complaint in three counts. In count I, plaintiffs sought a declaratory judgment that defendants breached the contract for retail credit by substantially altering the terms of the contract without plaintiffs' assent. Plaintiffs claimed 83 cents as damages. Plaintiffs sought the same declaratory judgment in count II of their complaint, but they sought it as representatives of the class of all of defendants' cardholders who were affected by the January notice. They also sought a refund of all charges paid pursuant to the January notice by all members of the class. In count III, plaintiffs, as representatives of the class described in count II, sought a declaratory judgment that the January notice violated "An Act in relation to unsolicited merchandise, contractual obligations and other intangibles." Ill. Rev. Stat. 1981, ch. 121½, par. 351.

Defendants moved to dismiss the complaint, and plaintiffs moved for class certification and summary judgment as to liability. Plaintiffs also filed a "Request for Findings of Fact and Conclusions of Law." The trial court dismissed the complaint with prejudice without ruling on plaintiffs' motions.

Plaintiffs argue that the "Retail Installment Credit Agreement" was a contract between plaintiffs and defendants, and the January notice was an attempt to modify the contract. They argue that the attempted modification failed because (1) there was no consideration for the modification, (2) defendants engaged in deceptive practices in order to induce acceptance of the modification, and (3) defendants construed silence as acceptance, in violation of the common law of con-

tracts and the "Act in relation to unsolicited merchandise ***." (Ill. Rev. Stat. 1981, ch. 121½, par. 351.) We find that the January notice effectively modified the credit contract, and therefore the trial court properly dismissed plaintiffs' complaint.

First, plaintiffs argue that there was no consideration for the modification because defendants did not promise to do anything more than they were obliged to do under the original agreement. Plaintiffs contend that the "10 valuable extra services" cannot be construed as consideration because nine of the services are only sales solicitations.[1] The only service whose availability was clearly contingent on payment of the increased fee was the provision of $100,000 insurance for travel on common carriers. Plaintiffs argue that the insurance is not adequate consideration for the modification because plaintiffs never received any benefits from the insurance, and the cost to defendants of the insurance was negligible.

■■ "The adequacy of consideration must be determined as of the time a contract is agreed upon, not from the hindsight of how the parties fare under it." (*Bonner v. Westbound Records, Inc.* (1979), 76 Ill. App. 3d 736, 743, 394 N.E.2d 1303.) Insurance has value to those insured even if the events on which the payments of benefits is conditioned do not occur. (*Wilson v. Continental Body Corp.* (1981), 93 Ill. App. 3d 966, 970, 418 N.E.2d 56.) The absence of any paid benefits from the insurance does not render the insurance inadequate consideration for the modification.

■■ ■ Plaintiffs also argue that the insurance was not adequate consideration for the five dollar increase in the annual fee because the cost to defendants of the insurance was negligible. Defendants paid only 10½ cents per year per cardholder for the common carrier insurance. However, "[i]t is not the function of either the circuit court or this court to review the amount of the consideration which passed to decide whether either party made a bad bargain [citations omitted] unless the amount is so grossly inadequate as to shock the conscience of the court." (*Bonner v. Westbound Records, Inc.* (1979), 76 Ill. App. 3d 736, 743.) We cannot say that our conscience is shocked by the exchange of two months of $100,000 of common carrier travel insurance coverage for plaintiffs' 83 cents. Therefore, we find that there was adequate consideration for the proposed modification of the credit agreement.

Plaintiffs next contend that defendants described the travel insur-

---

[1]The record does not show whether those sales offers were available to cardholders before the increase in the annual fee.

ance deceptively in their brochure, and that this deceptive practice renders any acceptance of the contract modification ineffective. In particular, plaintiffs argue that defendants violated Illinois consumer protection law (Ill. Rev. Stat. 1981, ch. 121½, pars. 261 *et seq.* and 311 *et seq.*) by describing the insurance as "free," by failing to advise cardholders that the insurance would still be available at the end of the annual renewal period for cardholders who initially rejected the increase, and by failing to inform cardholders concerning the source and availability of the insurance.

The Consumer Fraud and Deceptive Business Practices Act states:

> "\*\*\* unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, \*\*\* misrepresentation or the \*\*\* omission of any material fact, with intent that others rely upon the \*\*\* omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", \*\*\* in the conduct of any trade or commerce are hereby declared unlawful \*\*\*. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." (Ill. Rev. Stat. 1981, ch. 121½, par. 262.)

The Uniform Deceptive Trade Practices Act, section 2, defines "deceptive business practice" as including any action taken in the course of business which

> "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services; [or]
> \*\*\*
> (12) \*\*\* similarly creates a likelihood of confusion or of misunderstanding." Ill. Rev. Stat. 1981, ch. 121½, par. 312.

Plaintiffs argue that the use of the word "free" in the description of the insurance was a deceptive practice, in that defendants effectively charged plaintiffs 83 cents for two months of insurance coverage. In its leading case on the use of the word "free" in advertising, the Federal Trade Commission stated:

> "The use of the word 'Free' \*\*\* [is] an unfair or deceptive act or practice under the following circumstances:
>
> > (1) When all of the conditions, obligations, or other prerequisites to the receipt and retention of the 'free' article of merchandise are not clearly and conspicuously explained or

set forth at the outset so as to leave no reasonable probability that the terms of the advertisement or offer might be misunderstood; or

(2) When, with respect to the article of merchandise required to be purchased in order to obtain the 'free' article, the offerer either (1) increases the ordinary and usual price; or (2) reduces the quality; or (3) reduces the quantity or size of such article of merchandise." *In re Walter J. Black, Inc. Trading as the Classics Club & Detective Book Club* (1953), 50 F.T.C. 225, 235-36.

In the instant case, defendants clearly stated in the January notice that the insurance was available only to those cardholders who agreed to pay the higher fee. There was no reasonable probability that the offer would be misunderstood. At the time for renewal of plaintiffs' credit agreement, credit was available only on payment of a $20 annual membership fee; the insurance was available at no extra cost. Although the offer coincided with an increase in the basic price of an annual membership, the offer included the insurance at the new "ordinary and usual' price of an annual membership without reducing the quality or quantity of credit coverage available for plaintiffs. Therefore, we do not find the use of the word "free" in the description of the travel insurance to be a deceptive trade practice.

Next, plaintiffs argue that defendants' failure to inform cardholders that the insurance would be available at the end of the annual renewal period constituted a deceptive trade practice. Plaintiffs also contend that defendants violated Illinois consumer protection law by omitting many material facts from the brochure describing the insurance, enclosed with the January notice. Defendants did not include the name of the insurer, the terms of the policy, nor the price of similar insurance not available through defendants. Under the consumer fraud act, omissions from advertising brochures may be actionable if the brochures are deceptive or confusing due to the omissions. (Ill. Rev. Stat. 1981, ch. 121½, pars. 262 and 312.) We do not find that any omissions from defendants' brochure caused the brochure to be deceptive or confusing.

Defendants had no obligation to renew the credit cards after their expiration dates for cardholders who refused to pay the increased annual fee, even if defendants did have an obligation to continue to extend credit to such cardholders until their cards' expiration dates. Neither were defendants obliged to commit themselves, in the January notice, to making either credit or common carrier insurance available, at the time for renewal, to cardholders who refused to ac-

cept their proposed amendment to the credit agreement. Thus, defendants' failure to state that the insurance would still be available at the annual renewal period was not a deceptive practice, nor was it a violation of Illinois consumer fraud law. Similarly, defendants were not obliged to inform plaintiffs of the cost and extent of coverage available from other insurers or with other credit cards. *Mutual of Omaha Insurance Co. v. Russell* (10th Cir. 1968), 402 F.2d 339, 345-46, *cert. denied* (1969), 394 U.S. 973, 22 L. Ed. 2d 753, 89 S. Ct. 1456.

All other alleged omissions from defendants' brochure are failures to disclose terms of the common carrier insurance. Plaintiffs complain that the brochure fails to disclose such information as: the identity of the insurer; policy exclusions; the definition of "common carrier"; the duration of the policy; cancellation provisions; and the method of making claims. The average consumer understands that such provisions are contained in every insurance policy; their omission from the advertising brochure would not mislead the consumer. The terms of the policy are within conventional expectations, and they do not conflict with the description given in the brochure of the available coverage. (See *Consumers Construction Co. v. American Motorists Insurance Co.* (1969), 118 Ill. App. 2d 441, 452, 254 N.E.2d 265.) Moreover, under the terms of the "Retail Installment Credit Agreement," plaintiffs could have called a toll-free number for any further information they needed. Therefore, we hold that the various omissions from defendants' brochure do not constitute deceptive or confusing trade practices in violation of Illinois consumer protection law. We conclude that defendants did not engage in any deceptive practices which render plaintiffs' acceptance ineffective.

Finally, plaintiffs contend that they never accepted defendants' proposed modification of the credit agreement, and that defendants improperly construed plaintiffs' silence as acceptance.

■■ ■ According to the "Act in relation to unsolicited merchandise ***," silence is not to be construed as acceptance of unsolicited goods "[u]nless otherwise agreed ***." (Ill. Rev. Stat. 1981, ch. 121½, par. 351.) According to the Restatement (Second) of Contracts sec. 69(1)(c) (1981), an offeror may construe silence as acceptance "[w]here because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intent to accept." In this case, the credit agreement included the explicit provision that the agreement could be amended by defendants on 30-days' notice, and silence in response to the notice would constitute acceptance of the amendment. Because of this express amendment provision

in the agreement, defendants' conduct does not violate either the "Act in relation to unsolicited merchandise ***" or the common law of contracts as reflected in the Restatement.

Plaintiffs contend that the amendment provision in the credit agreement has no legal effect because it causes the agreement to be ambiguous; if the amendment provision, together with the cancellation provision, is given full, literal effect, plaintiffs received nothing at all in return for their $15 "annual membership fee." According to the amendment provision, defendants "can change this Agreement *** at any time," and plaintiffs, if they do not accept the changes, are obliged to "return the card cut in half *** and pay *** the balance." Under the cancellation provision, defendants retain the right to cancel the card at any time. Plaintiffs argue that, if these provisions are given effect, defendant could double the annual fee, then cancel the credit cards immediately after receiving the fees, giving nothing at all in return for the money. Plaintiffs contend that to avoid such an irrational construction, the amendment and cancellation provisions must be given no effect. We disagree.

Every provision in a contract should be given effect, if possible, according to its terms. (*Continental Television Corp. v. Caster* (1963), 42 Ill. App. 2d 122, 128, 191 N.E.2d 607.) Every contract contains an implied covenant of good faith and fair dealing. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 286, 154 N.E.2d 683.) As long as the amendment provision is read in light of the covenant of good faith, it may be given effect without any of the dire consequences plaintiffs imagine.

In the instant case, defendants gave plaintiffs the option of continuing to receive credit according to the terms of the original credit agreement until the expiration date on plaintiffs' credit cards. Defendants gave plaintiffs proper notice of the proposed changes, and they offered consideration for the amendment. Thus, defendants fully complied with both the amendment provision and the covenant of good faith. Defendants properly construed plaintiffs' silence as acceptance of the proposed modification, following the amendment provision of the credit agreement. Therefore, we find that the trial court properly dismissed the complaint.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.