FOURTH DIVISION
 November 14, 1996

No. 1-94-1901

CARMEN ORTIZ, Individually ) Appeal from the
and on Behalf of All Others ) Circuit Court 
Similarly Situated, ) of Cook County
 ) 
 Plaintiffs-Appellants- ) 
 Cross-Appellees, )
 )
v. )
 )
GENERAL MOTORS ACCEPTANCE )
CORPORATION, INC. and )
MOTORS INSURANCE )
CORPORATION, INC., )
 ) Honorable
 Defendants-Appellees- ) Thomas P. Quinn,
 Cross-Appellants. ) Judge Presiding.

 JUSTICE O'BRIEN delivered the opinion of the court:
 Plaintiffs bought automobiles in Illinois and financed their
purchases through retail installment contracts with the dealers who
sold the autos. Each retail installment contract required
plaintiffs to maintain property damage insurance coverage on the
autos and allowed the contract holder to buy single interest
insurance (SII), which protects only the contract holder's
investment in the vehicle, if the plaintiffs failed to maintain
their insurance. The contracts with plaintiffs were assigned to
defendant, General Motors Acceptance Corporation (hereinafter
GMAC), which later bought SII after the plaintiffs failed to
maintain their insurance. 
 Plaintiffs filed a four-count class action. Count I alleges
that GMAC's purchase of SII violated the Consumer Fraud and
Deceptive Business Practices Act (Consumer Fraud Act). (815 ILCS
505/1 et seq. (West 1992). Count IV alleges that the purchase
violated the Sales Finance Agency Act(205 ILCS 660/1 et seq.(West
1992)). Partial summary judgment was entered for each of the
parties on count I. Summary judgment was entered for GMAC on count
IV. The court made a written finding, pursuant to Supreme Court
Rule 304(a) (134 Ill. 2d R. 304(a)), that "there is no just cause
for delay of enforcement or appeal" of its order. Plaintiffs
appeal from summary judgment for GMAC on part of count I and all of
count IV. GMAC cross-appeals from partial summary judgment for
plaintiffs on count I. Counts II and III are not part of this
appeal.
 First, we address our jurisdiction of count I. Prado v.
Evanston Hospital, 72 Ill. App. 3d 622, 624 (1979). A judgment
must be final for the appellate court to have jurisdiction over an
appeal, unless a statutory or supreme court rule exception applies.
In re Marriage of Verdung, 126 Ill. 2d 542, 553 (1989). A
judgment is final if it determines the litigation on the merits or
some definite part thereof so that, if affirmed, the only thing
remaining is to proceed with execution of the judgment. Verdung,
126 Ill. 2d at 553. 
 Count I states a single theory of recovery--violation of the
Consumer Fraud Act--by way of multiple subparagraphs. The trial
court granted summary judgment for plaintiffs on only paragraphs
77(f) and 78(f) of count I, which alleged that GMAC violated the
Consumer Fraud Act by charging for more insurance than provided
under the policy. The trial court did not award damages, and,
therefore, the order granting summary judgment on paragraphs 77(f)
and 78(f) of count I is not final. Charter Bank v. Eckert, 198
Ill. App. 3d 499, 502 (1990). As a result, we have no jurisdiction
to review the partial summary judgment to each party on count I. 
See Hull v. City of Chicago, 165 Ill. App. 3d 732 (1987) (when a
single claim is stated by multiple subparagraphs, an appeal cannot
be taken until the trial court enters a final order on all of the
subparagraphs). This is true even where, as here, the trial court
made a Rule 304(a) finding. See Rice v. Burnley, 230 Ill. App. 3d
987, 991 (1992) ("the fact that an order contains the requisite
Rule 304(a) language does not make a nonfinal order appealable"). 
Accordingly, we dismiss plaintiff's appeal and GMAC's cross-appeal
from partial summary judgment on count I. 
 Next, we address our jurisdiction of count IV. We have
reviewed the orders from which this appeal is taken, and the
summary judgment for GMAC on subparagraphs 82, 83, 84, 85, 86, 87,
and 88 of count IV is a final order.
 It is well established that the trial court should grant
summary judgment only when "the pleadings, depositions, and
admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law." 735
ILCS 5/2-1005(c) (West 1992).
 First, plaintiffs argue the trial court erred by granting
summary judgment for GMAC on paragraph 82 of count IV. Plaintiffs
claim that GMAC's failure to send them a copy of the SII policy or
otherwise explain its terms and limitations, as required by Rules
17(c)(4) and (c) (5) of the Department of Financial Institutions
violated section 8.2 of the Sales Finance Agency Act. 
 Section 8.2 of the Sales Finance Agency Act prohibits:
 "[w]illful violation or aiding any person in
 the willful violation of *** any rule or regulation
 promulgated by the Director [of Financial
 Institutions]." 205 ILCS 660/8.2 (West 1992).

 Department of Financial Institutions Rule 17(c)(4) states: 

 "It shall be the licensee's responsibility to
 explain clearly to the obligor the type, cost,
 benefits and limitations of any insurance requested
 by licensee after acquisition of the account." 38
 Ill. Adm. Code 160.170 (c)(4)(1996). 

 Department of Financial Institutions Rule 17(c)(5) states: 

 "The licensee shall also deliver or cause to be
 delivered to the obligor a copy of the policy, or
 policies, certificate, or other evidence thereof
 acquired by the licensee in connection with the
 indebtedness." 38 Ill. Adm. Code 160.170
 (c)(5)(1996).

 However, Rule 17(c) applies only to insurance "provided by a
licensee for a buyer." (Emphasis added.) 38 Ill. Adm. Code
160.170(c)(1996). It is undisputed that GMAC buys SII only after
the plaintiff car buyer defaults on his obligation to maintain his
own insurance, and the SII protects only GMAC's investment in the
vehicle, not the plaintiff's investment. Thus, GMAC purchases SII
for itself, not "for a buyer." Department of Financial
Institutions Rule 17(c), therefore, does not apply here as a matter
of law, and the trial court properly granted summary judgment for
GMAC on paragraph 82 of count IV.
 Second, plaintiffs argue the trial court erred in granting
summary judgment for GMAC on paragraph 83 of count IV. Plaintiffs
claim that GMAC's failure to send plaintiffs a copy of the SII
policy within 30 days after the date of the purchase of the
insurance, as required by section 9 of the Motor Vehicle Retail
Installment Sales Act (815 ILCS 375/9 (West 1996), violated section
8.3 of the Sales Finance Agency Act. Section 8.3 of the Sales
Finance Agency Act prohibits:
 "[a]iding or conspiring to aid any person in
 the willful violation of *** the [Motor Vehicle
 Retail Installment Sales Act]." 205 ILCS 660/8.3
 (West 1992).

Section 9 of the Motor Vehicle Retail Installment Sales Act
provides in relevant part:

 "All insurance which is purchased by the seller or
 holder and for which an amount is included in a
 contract must be written by an insurance company
 authorized to do business in the State and the
 seller or holder is responsible as though such
 insurance were in force from the date the buyer
 takes possession of the vehicle. The holder of a
 contract which includes an amount for insurance
 purchased by the seller or holder must, within 30
 days after the date of the contract, cause to be
 sent to the buyer the policies or certificates of
 insurance clearly setting forth the amount of the
 premium, the types of insurance, the coverages and
 all the terms, exceptions, limitations,
 restrictions and conditions of the insurance ***."
 (Emphasis added.) 815 ILCS 375/9 (West 1992).
 Thus, contrary to plaintiffs' argument, the clear language of
section 9 of the Motor Vehicle Retail Installment Sales Act states
that the holder must send the plaintiff (buyer) a copy of the
insurance policy within 30 days after the date of the contract, not
the date of the purchase of the insurance. Further, the holder
must send the plaintiff a copy of the insurance policy only if the
contract "includes an amount for insurance". (815 ILCS 375/9 (West
1996)). Here, GMAC acquired retail installment contracts from a
seller only if the plaintiffs had already obtained insurance
coverage. Therefore, none of the relevant contracts GMAC initially
acquired included an amount for insurance, because the plaintiffs
had their own insurance policies. Later, after the plaintiffs
breached their agreement to maintain property damage insurance
coverage, GMAC purchased SII and added the premium to the
plaintiffs' accounts. However, the contracts were never rewritten
to include therein an amount for insurance. Accordingly, section
9 of the Motor Vehicle Retail Installment Sales Act does not apply
here as a matter of law, and the trial court properly granted
summary judgment for GMAC on paragraph 83.
 Third, plaintiffs argue the trial court erred by granting
summary judgment for GMAC on paragraphs 84 and 85 of count IV. 
Plaintiffs claim that GMAC violated sections 8.4 and 8.5 of the
Sales Finance Agency Act by purchasing retail installment contracts
in violation of section 8 of the Motor Vehicle Retail Installment
Sales Act. 
 Section 8.4 of the Sales Finance Agency Act prohibits:
 "[e]xcept for honest mistake, purchase of any
 retail contract, retail charge agreement, or
 evidence of indebtedness thereunder, which on its
 face violates *** the [Motor Vehicle Retail
 Installment Sales Act]." 205 ILCS 660/8.4 (West
 1992). 

 Section 8.5 of the Sales Finance Agency Act prohibits:

 "[p]urchase of any retail contract, retail
 charge agreement, or evidence of indebtedness
 thereunder after actual knowledge that the
 contract, agreement or evidence of indebtedness
 violates *** the [Motor Vehicle Retail Installment
 Sales Act]." 205 ILCS 660/8.5 (West 1992). 

 Section 8 of the Motor Vehicle Retail Installment Sales Act
provides in relevant part:

 "A seller under a retail installment contract
 may require insurance against substantial risk of
 loss of or damage to the motor vehicle, protecting
 the seller or holder as well as the buyer ***." 
 (Emphasis added.) 815 ILCS 375/8 (West 1992).
 Plaintiffs argue that section 8 of the Motor Vehicle Retail
Installment Sales Act requires property damage insurance protecting
the seller or holder of the contract and the buyer (plaintiffs). 
Plaintiffs contend that the retail installment contracts held by
GMAC violate section 8 of the Motor Vehicle Retail Installment
Sales Act by allowing GMAC to purchase SII, which protects only
GMAC's (the holder's) interest in the autos, if the plaintiffs fail
to maintain property damage insurance coverage.
 We disagree. Section 8 of the Motor Vehicle Retail
Installment Sales Act allows a seller to require property damage
insurance protecting both plaintiff and seller's interest in the
auto. However, section 8 does not prohibit a holder from
purchasing SII to protect only its interest in the auto when, as
here, the plaintiffs have breached their agreement to maintain such
property damage insurance. Thus, the retail installment contracts
do not violate section 8 of the Motor Vehicle Retail Installment
Sales Act as a matter of law. Accordingly, the trial court
properly granted summary judgment for GMAC on paragraphs 84 and 85
of count IV.
 Fourth, plaintiffs argue the trial court erred by granting
summary judgment for GMAC on paragraph 86 of count IV. Plaintiffs
claim that GMAC violated section 8.7 of the Sales Finance Agency
Act.
 Section 8.7 of the Sales Finance Agency Act prohibits:
 "[u]se of printed or otherwise mechanically
 reproduced forms which are misleading or deceptive
 in whole or in part." 205 ILCS 660/8.7 (West
 1992). 

 GMAC sent two form letters to plaintiffs disclosing
information about SII. Plaintiffs contend those letters were
deceptive and misleading because they did not inform plaintiffs
about various important terms and limitations that make SII
function differently than the more common dual interest insurance,
which protects the plaintiffs' interest in their vehicles. In
support, plaintiffs cite the statements of GMAC employees and a
linguistics professor that the letters created confusion about how
SII differed from dual interest insurance. We review the letters
themselves to determine whether they are clear and unambiguous.
 The first letter states "if you are unable to obtain the
required insurance, we may, under the terms of your contract, order
Single Interest Insurance. This coverage partially protects GMAC
against Fire, Theft and Collision damage while the vehicle is
financed. *** Single Interest insurance does not protect your
investment in the vehicle. It is to your benefit to obtain the
Dual Interest Insurance coverage which protects your interest and
GMAC's." The letter also sets forth a telephone number to call if
the addressee has any questions. 
 The second letter states "we would like to remind you that
Single Interest Insurance does not protect your investment in the
vehicle and only partially protects GMAC against Fire, Theft and
Collision damage while the vehicle is financed."
 This case is similar to Fineman v. Citicorp, 137 Ill. App. 3d
1035 (1985). There, Citicorp sent a brochure to credit cardholders
describing "free $100,000 common carrier travel insurance" for
those who paid an increased fee. Plaintiffs brought suit alleging
that omissions from the brochure, such as the identity of the
insurer; policy exclusions; and cancellation provisions caused the
brochure to be deceptive or confusing. The trial court dismissed
the complaint.
 The appellate court affirmed, noting that the alleged
omissions are contained in every insurance policy, the terms of the
policy did not conflict with the description given in the brochure,
and that plaintiffs could have called a toll-free number for any
further information they needed. Fineman, 137 Ill. App. 3d at
1042. Therefore, the omissions from the brochure were not
deceptive or confusing. Fineman, 137 Ill. App. 3d at 1042.
 Similarly, the terms of the SII policy did not conflict with
the letters sent to plaintiffs, and the first letter provided a
telephone number plaintiffs could have called for further
information. Plaintiffs argue, though, that unlike Fineman, the
terms omitted from the letters varied from the terms of the more
typical dual interest insurance. However, the letters clearly
stated that SII only protected GMAC's investment in the vehicle and
that it was in the plaintiffs' interest to obtain dual interest
insurance protecting their interest in the automobile; thus, the
letters put plaintiffs on notice that SII differed from and was
less comprehensive than dual interest insurance, and they provided
a method by which plaintiffs could have received any further
information they needed. Accordingly, we find as a matter of law
that the letters were not "misleading or deceptive" such that they
violated section 8.7 of the Sales Finance Agency Act and, because
we find the terms of the letters to be clear and unambiguous, we
need not consider any parol evidence. See Grand-Kahn Electric,
Inc. v. Transportation Building Corp., 15 Ill. App. 3d 580 (1973). 
Accordingly, the trial court properly granted summary judgment for
GMAC on paragraph 86 of count IV. 
 Fifth, plaintiffs argue the trial court erred by granting
summary judgment for GMAC on paragraph 87 of count IV. Plaintiffs
claim GMAC violated section 8.9 of the Sales Finance Agency Act by
"fraudulently misrepresenting, circumventing, concealing by
subterfuge and device the type, cost, benefits and limitations of
the [SII] purchased by GMAC for the [plaintiffs]." 
 Section 8.9 of the Sales Finance Agency Act prohibits: 

 "[f]raudulent misrepresentation, circumvention or
 concealment by the licensee through whatever
 subterfuge or device of any of the material
 particulars or the nature thereof required to be
 stated or furnished to a retail buyer under the ***
 [Motor Vehicle Retail Installment Sales Act]." 205
 ILCS 660/8.9 (West 1992).

 Paragraph 87 essentially repeats the allegations of paragraph
86 that GMAC failed to disclose how SII functioned differently from
dual interest insurance. As discussed earlier, we find as a matter
of law that GMAC adequately disclosed the differences between the
two types of insurance. Accordingly, the trial court properly
granted summary judgment for GMAC on paragraph 87 of count IV.
 Finally, plaintiffs argue the trial court erred by granting
summary judgment for GMAC on paragraph 88 of count IV. Plaintiffs
claim GMAC violated sections 8 and 9 of the Motor Vehicle Retail
Installment Sales Act and Department of Financial Institutions
Rules 17(c)(4) and (c)(5) by purchasing SII and failing "to send
the [plaintiffs] the policies or certificates of insurance setting
forth the amount of the premium, the types of insurance, the
coverages and all the terms, exceptions, limitations, restrictions
and conditions of the insurance." Paragraph 88 essentially repeats
the allegations of paragraphs 82, 83, 84, 85, 86, and 87, on which
the trial court properly granted summary judgment in GMAC's favor. 
Accordingly, the trial court also properly granted summary judgment
for GMAC on paragraph 88 of count IV.
 We have found that GMAC did not violate either the Department
of Financial Institutions rules or the Motor Vehicle Retail
Installment Sales Act. Therefore, we need not address GMAC's
argument that no private right of action exists for a violation of
the Department of Financial Institutions rules or the Motor Vehicle
Retail Installment Sales Act.
 For the foregoing reasons, we dismiss plaintiffs' appeal and
GMAC's cross-appeal from the partial summary judgment for each
party on count I and affirm the summary judgment for GMAC on count
IV.
 Dismissed in part and affirmed in part.
 HOFFMAN, P.J. and THEIS, J., concur.